## NATHANIEL HARRIS v. STATE OF INDIANA.

[No. 2-672A23. Filed November 21, 1972. Rehearing denied January 8, 1973, Transfer denied September 21, 1973.]

---

David F. McNamar, Steers, Klee, Sullivan & LeMay, of Indianapolis, for appellant.

Theodore L. Sendak, Attorney General, Robert F. Colker, Assistant Attorney General, for appellee.

LYBROOK, J.—Appellant (Harris) was charged by affidavit with Theft, tried without jury, convicted, and sentenced to not less than one nor more than five years.

Harris' Motion to Correct Errors presents two issues for

review: (1) The verdict is not supported by sufficient evidence. (2) The verdict is contrary to law.

State's witness Lloyd McGinnis, an employee of a neighboring business, testified that on numerous occasions he had seen Harris drive up in a white, Econoline Ford truck, reach inside the Hoyt Machine Co. (Hoyt) building, pull out brass bars, load them into the truck and drive away. However, he could not testify that this occurred on September 13, 1971, the date alleged in the affidavit.

Harris maintains that this testimony cannot be considered because it failed to establish a date upon which the theft he saw was committed and therefore was not proven to have occurred within the Statute of Limitations.

Assuming this to be the case, for the purpose of argument, the question remains "Is the other testimony plus the reasonable inferences to be drawn therefrom, sufficient to sustain the conviction?"

William Bray, an employee of Hoyt, testified that on September 13, 1971, he saw Harris pulling a brass bar from the storage rack inside the Hoyt building. Bray went to get his foreman and when he returned, "they" were gone and a white Ford Econoline van was leaving.

George Bowling, an employee of Hoyt, saw Harris in the shop on September 13, 1971. He also saw a white Ford van at the shop on that date and three different occasions during the month of September, 1971.

Fred Sommer, partner of Hoyt testified that there were several brass rods missing from the shop when they were ready to use them, a week or ten days after September 13, 1971.

Harris testified he went to Hoyt on September 13, 1971, driving his white Ford van, seeking employment.

The elements necessary for conviction of theft under IC 1971, 35-17-5-3; Ind. Ann. Stat. § 10-3030 (Burns Supp.

1972), are (1) that Harris knowingly obtained or exerted unauthorized control over the brass bar, (2) with the intent to deprive the owner of the use or benefit thereof.

On appeal, we can neither weigh evidence nor determine witness' credibility. We must view the evidence and inferences therefrom, most favorable to the State and must affirm where there is evidence of probative value from which the trier of fact could infer guilt beyond a reasonable doubt. *Buise* v. *State* (1972), 258 Ind. 321, 281 N.E.2d 93 and *Liston* v. *State* (1969), 252 Ind. 502, 250 N.E.2d 739.

An eyewitness placed Harris at the Hoyt Machine Co. on September 13, 1971, pulling a brass bar from Hoyt's storage rack. This witness left to get his foreman and when he returned, Harris and the bar were missing and a truck like Harris' was driving away up the alley. This evidence was of sufficient probative value to permit the court to infer Harris' guilt, beyond a reasonable doubt.

Appellant also contends that the trial court erred in sentencing the defendant when it failed to inquire into his sanity at time of his sentencing and that this was contrary to law.

After Harris was found guilty, a precommitment investigation report was duly filed with the court. It revealed that Harris had resided at Norman Beatty Hospital from September 26, 1961 to June 26, 1969 and Central State Hospital from June 26, 1969 to December 28, 1970. The report further stated:

> "The defendant's Criminal History dates back to 1949. He was sentenced 2-14 years to the Indiana State Reformatory in 1955, for Uttering a Forged Instrument. In 1956, he was made a parolee registrant. He violated his parole and was returned to the Reformatory. On September 26, 1961, the defendant was transferred to Norman Beatty Memorial Hospital until June 26, 1969. He was then transferred to Central State Hospital and was released on December 28, 1970."

During the trial Harris revealed on cross-examination that he had been confined at Westville in 1954.

The above report concluded by saying:

"It is the opinion of this Department, after interviewing the defendant, that he is still mentally insufficient and would not conform to an accepted behavior pattern in society. Therefore, Mr. Harris would be a poor probation risk."

Harris maintains that IC 1971, 35-8-1-2; Ind. Ann. Stat. § 9-2252 (Burns Supp. 1972) required the court to consider the report. The statute reads in part:

"No defendant convicted of a felony shall be committed by any criminal court of record before a written precommitment investigation report, prepared by a probation officer, is presented to and *considered* by the sentencing court." [Our emphasis].

We agree that the court had a statutory duty to consider the report but must conclude that the same was advisory only and not mandatory.

Harris next argues that IC 1971, 35-5-3-3; Ind. Ann. Stat. § 9-2217a (Burns Supp. 1972) required a sanity hearing due to the suggestion of the Probation Officer that Harris was "still mentally insufficient." This statute reads in part:

"When the defendant in a criminal cause appears for judgment, and the court, either from his own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane, the question of his insanity shall be determined by a jury . . ."

The above statute requires a sanity determination where the court "has reasonable ground for believing the defendant to be insane." An assertion of opinion by a probation officer does not bind the court in its determination. The test, as set forth in *Cook* v. *State* (1972), 258 Ind. 667, 284 N.E.2d 81, is:

"There must be a hearing when the evidence raises a bona fide doubt as to the defendant's competency." (Citing *Pate* v. *Robinson* (1966), 383 U.S. 375.)

In *Cook,* the court held that a request by the defendant for a psychiatric examination constituted no evidence as to his mental condition, and where court-appointed psychiatrists found defendant competent to stand trial, there was no evidence raising a bona fide doubt as to defendant's sanity.

It has long been the law in Indiana that when a defendant in a criminal cause desires to plead that he was of unsound mind at the time the offense charged was committed, he must himself, or by his counsel, set up such a defense specially in writing. IC 1971, 35-5-2-1; Ind. Ann. Stat. § 9-1701 (Burns 1956).

In the case at bar however, Harris did not at any time plead insanity. He and his counsel did not raise this issue either before or during the trial nor was there any objection by the defendant or his counsel at sentencing. Furthermore, the mental capacity of the defendant is not even mentioned in the *Motion to Correct Errors* or the *Memorandum* attached thereto.

This poses a serious question as to whether the issue of the defendant's lack of mental capacity was properly preserved for consideration upon appeal. TR. 59 (G), Indiana Rules of Procedure provides in part as follows:

"(G)   Motion to correct error a condition to appeal. In all cases in which a motion to correct errors is the appropriate procedure preliminary to an appeal, such motion shall separately specify as grounds therefor each error relied upon however and whenever arising up to the time of filing such motion. Issues which could be raised upon a motion to correct errors may be considered upon appeal only when included in the motion to correct errors filed with the trial court."

Aside from the non-compliance with TR. 59 (G) however, Harris' failure to even mention mental capacity in the trial court left the determination of this matter within the sound discretion of the trial judge.

The precommitment report contained nothing which re-

quired the trial judge to believe the defendant to be insane. The history of the prior commitments and the statement of opinion were merely the bases for the probation officer's conclusion that Harris would be a poor probation risk.

When the precommitment report was filed prior to sentencing, appellant and his counsel are presumed to have been aware of its contents. After acquiring this knowledge Harris still remained silent. Neither did he claim any lack of mental capacity in his Motion to Correct Errors filed over a month later. Our Supreme Court has held many times that a party may not sit idly by and permit the court to act and then attempt to take advantage of an error at a later time. *Reid* v. *State* (1967), 249 Ind. 247, 231 N.E.2d 808, and cases cited therein.

Harris further argues that the court by ignoring the "suggestion" of the Probation Officer thereby violated IC 1971, 35-8-1-2; Ind. Ann. Stat. § 9-2252 (Burns Supp. 1972). This section of the statute provides in part that:

> *"Where in the opinion of the sentencing court, or the in-investigating authority,* it is desirable, the recommitment investigation *may* include a physical and mental examination of the defendant."* (Our Emphasis)

Again we have before us a Statute which is not mandatory in its terms, but wisely permits the trial judge a wide range of discretion. Neither the probation officer nor the defendant requested an examination, physical or mental.

Reasonable judicial minds might differ widely as to the proper course of action when confronted by a problem of this nature. Although defendant's past history and the probation department's report were strong warnings, the granting of a sanity hearing was within the sound discretion of the court since there had been no specific request therefor. As the court stated in *Sims* v. *State* (1965), 246 Ind. 660, 208 N.E.2d 469, Cert. Den., 384 U.S. 922:

"Since the issue of insanity was not formally presented by appellant prior to the trial as provided by § 9-1701, *supra*, a determination of this issue under the statutes relied upon §§ 9-1706a and 9-2217a, *supra*, was discretionary with the court."

Harris' sanity is first mentioned in appellant's brief. We hold that the trial judge did not abuse his discretion in failing to grant a procedure which neither Harris nor his counsel ever requested and where the evidence did not compel the trial judge to reach the conclusion that there were reasonable grounds to believe that Harris was insane.

Judgment affirmed.

Robertson, P.J., Lowdermilk, J., concur.

NOTE.—Reported at 289 N.E.2d 344.