JAMES KINDRED *v.* STATE OF INDIANA.

[No. 1-773A134. Filed June 18, 1974. Rehearing denied August 2, 1974. Transfer denied December 18, 1974.]

*Joseph B. Barker, H. Pamela Allen, Kagan and Barker,* of Martinsville, for appellant.

*Theodore L. Sendak,* Attorney General, *David A. Miller,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant was convicted by a jury on March 3, 1973, for the commission of a felony, robbery, while armed with a dangerous or deadly weapon, and was later sentenced to ten years imprisonment. Motion to correct errors was timely filed and was overruled. Three issues are presented by appellant in his appeal and will be treated herein.

Defendant-appellant entered Geraldine's Truck Stop south of Martinsville, Indiana, on September 25, 1971, at about 11:00 P.M. and announced "This is an armed robbery." Robert Gerrard, an employee, gave the hold up man forty to forty-five dollars, after which the felon left, driving a 1963 or 1964 Ford, emitting a loud noise caused by a faulty muffler, and headed toward Martinsville.

Sheriff Paul Mason, in response to Gerrard's call, came promptly to the truck stop where Gerrard and his wife described the hold up man as being about five feet eight or nine inches tall and weighing 145 to 160 pounds, being of square build and having dark hair and eyes and wearing a gray hooded sweat shirt tied under his nose, blue jeans and carrying a dark colored 22 caliber automatic pistol. They also informed Mason they recognized the man as having eaten in the truck stop several times, but they did not know

his name. Mr. Gerrard also informed the sheriff as to the identity of the get-away car by describing the round tail lamps as those of a 1963 or 1964 Ford automobile and the excessive noise from a defective muffler or exhaust pipe.

At about 3:00 o'clock A.M. on the morning of September 26, 1971, Sheriff Mason heard a Martinsville police dispatch on the radio that defendant-appellant was armed and creating a disturbance at the home of Jody Mathers in Martinsville. Sheriff Mason and numerous deputies and other police went to the Mathers home and saw a tan 1963 Ford Thunderbird sitting in an alley next to the house with its motor running and the exhaust making an unusually loud noise. They later determined this car was registered to defendant-appellant.

Mrs. Mathers and one Nina Hamblin were outside the home and informed the sheriff that Mrs. Mathers and appellant had had an argument and that the appellant had a gun and had hit Mrs. Mathers and Mrs. Hamblin's four year old daughter. At that time the sheriff was told appellant had left on foot and they looked for him in the neighborhood for an hour or so. After giving up the search at that time the sheriff later received a dispatch that Kindred had returned to the Mathers home and was trying to get in. The sheriff and his deputies returned, knocked on the door of the Mathers home and one Janet Bolyard, a neighbor and friend of Mrs. Mathers, answered and said appellant Kindred was not there but she gave police permission to enter the house and look around. A deputy sheriff found appellant Kindred hiding in a clothes closet with a 22 caliber automatic pistol on the floor and a gray hooded sweat shirt was found under the bed. Appellant Kindred was then taken to jail and his car towed to a service station in Martinsville.

The following day Sheriff Mason had appellant Kindred's car photographed at the service station and also had it raised on the hoist and a photograph taken of the exhaust system, which showed a large hole in the exhaust pipe just

before it entered the muffler and from which the excessive sounds came when the motor was running.

The first issue is—was the warrantless arrest of Kindred without probable cause and therefore illegal?

Appellant Kindred contends that Sheriff Mason had no more than a hunch or suspicion that Kindred had committed the armed robbery at Geraldine's Truck Stop, which was insufficient to constitute probable cause and therefore his arrest was illegal. He further contends that this being an illegal arrest the evidence seized incident to the arrest—the sweat shirt, pistol and photographs of his impounded car—were illegally obtained and should not have been admitted into evidence at trial.

Sheriff Mason did testify that he was looking for appellant Kindred on a hunch. However, he further testified that his hunch was based on the identification given him by the hold up victims shortly after the robbery; further, that police had received a report that Kindred was armed and causing a disturbance in Martinsville where the robber had headed after the hold up and further, on arrival at the scene of the disturbance at Mrs. Mathers' home, he and other deputies discovered appellant Kindred's car, a 1963 Ford Thunderbird, the motor running, with the exhaust pipe emitting unusually loud noises, all of which matched the description of the car and the emission of noises from the exhaust that the robber had fled the scene of the hold up in.

The court, in the case of *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133, 136, in speaking of the right to arrest without a warrant and discussing probable cause, said:

> "The test for probable cause to make an arrest is whether at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that the arrestee had committed or was committing an offense. . . ."

In the case of *McGowan* v. *State* (1973), 156 Ind. App. 344, 296 N.E.2d 667, Division 2 of this court, in discussing probable cause, cited the test in *Smith, supra,* and further held that when the officer did not have a warrant he must have probable cause to effectuate an arrest.

Following the test in *Smith, supra,* we are of the opinion that Sheriff Mason had sufficient evidence on which to base probable cause and that the arrest of appellant Kindred was made under facts and circumstances within the sheriff's knowledge of which they had reasonably trustworthy information and were sufficient to a prudent man of reasonable caution in believing that the arrestee had committed the hold up of the truck stop. It is our further opinion that the arrest and impoundment of the appellant's motor vehicle was legal.

Appellant's second issue is—did the trial court err in admitting the sweat shirt and photographs of Kindred's car obtained after it was towed to the service station into evidence?

Appellant Kindred relies on the case of *Johnson* v. *State* (1973), 157 Ind. App. 105, 299 N.E.2d 194, from which he quotes:

> "The scope of a search incident to a valid arrest without a search warrant is circumscribed by the area within the arrestee's immediate control—the area in which the arrestee might gain possession of a weapon or destructible evidence."

He further contends that the items seized after defendant-appellant's arrest could not be deemed areas within the defendant's immediate control; that the defendant was arrested in a closet, promptly handcuffed and immediately thereafter a search was made of the adjoining bedroom and the sweat shirt found under the bed.

He further contends that even if the arrest was legal the sweat shirt and photographs of his car should not have been

admitted because they were obtained in a warrantless search incident to that arrest which exceeded the permissible scope of such a search. The State contends in response thereto that the search in which the sweat shirt was discovered occurred at the residence of Mrs. Mathers and appellant Kindred had no standing to object to the search of property which he did not own or have the right to possess. Appellant's argument on illegal search in this instance is without merit under the holding of *Butler* v. *State* (1972), 154 Ind. App. 361, 289 N.E.2d 772, 775, wherein our Supreme Court held:

"But more important to this appeal is who may wrap himself in the mantle of constitutional security against unreasonable searches and seizures. The right is personal. Violation of a third party's constitutional rights cannot be claimed by an accused as grounds for suppression of evidence sought to be introduced against him. . . .

Objection to an illegal search and seizure of a third party's property which the defendant does not own, or have the right to possess, is of no avail. . . ." See, also, *Kirkland* v. *State* (1968), 249 Ind. 305, 232 N.E.2d 365.

Janet Bolyard authorized the officers to enter the house to make the search and as the house was either owned or under the possession and control of Mrs. Mathers and not owned or under possession of defendant-appellant it is clear that even though the search might have been improper it cannot be used by the appellant for exclusion of evidence seized. *Butler* v. *State, supra.*

The illegality of an arrest has relevancy on appeal only when the admissibility of evidence obtained incident to an illegal arrest is an issue in the case. *Dickens* v. *State* (1973), 260 Ind. 284, 295 N.E.2d 613; *Shelton* v. *State* (1972), 259 Ind. 559, 290 N.E.2d 47.

We are of the opinion that the only issue raised concerning seizure of the automobile by sheriff's officers at the time of the incident at Mrs. Mathers' residence concerns the admissibility into evidence of the photograph of the underside of

defendant-appellant's automobile. In the case of *Fisher* v. *State* (1973), 259 Ind. 633, 291 N.E.2d 76, wherein there was a shooting and the defendant's truck was sitting on a lot and was photographed by police who went upon the lot and with an ordinary camera took pictures showing no more than anyone standing near the truck would have been able to see with his own eyes, it was held that this did not constitute a search of the truck. The court held it was not error to admit into evidence in a homicide prosecution photographs of defendant's truck. Our Supreme Court had this to say:

> "The first step in the analysis of this problem is to decide if the facts here constitute a search of the truck owned by appellant. We think not. The evidence introduced by the State were all pictures taken by an ordinary camera of the outside of the truck. The pictures showed no more than anyone standing near the truck would be able to see with his own eyes. There was no prying into private places, exploratory investigations or violations of personal areas by the police in taking these photographs. Taking ordinary pictures of a vehicle sitting in open view in a vacant lot is not of itself a search of that vehicle within the meaning of the Federal or State Constitution. . . ."

In the case at bar appellant Kindred's car was parked in a public alley with the motor running and emitting loud noises from the exhaust pipe or muffler and after his arrest and incarceration in the jail his car was towed to a Shell service station in Martinsville for safekeeping. The photographs, (which the reporter omitted to put in the record,) apparently show nothing that a person could not see by walking up to the car, stooping and looking under it. Therefore, as in *Fisher, supra,* the photographs of the automobile were not obtained in a search and were legally secured and properly admitted into evidence.

Even assuming that appellant Kindred correctly asserts that the photographs of the exhaust and muffler of the car were illegally obtained and should have been suppressed, we are of the opinion that they were merely cumulative evidence to establish that the car operated by the hold up

man and identified by the victims, Mr. and Mrs. Gerrard, had a defective exhaust and emitted unusually loud noises and was the 1963 Ford Thunderbird used in the hold up. Any error as to their admission would be harmless and not reversible error. *Johnson* v. *State* (1973), 157 Ind. App. 105, 299 N.E.2d 194, 199.

The third issue argued in appellant's brief is—did the trial court err in allowing discovery by the State of the defendant's list of witnesses?

Prior to trial the State filed a motion for a list of defendant's witnesses, to which motion defendant-appellant made no objections and the trial court immediately ordered defendant-appellant to supply the list and the order was complied with. This claimed error was not asserted by defendant-appellant until the filing of his motion to correct errors.

Appellant Kindred in his brief contends there is no statute, rule or case law allowing discovery by the State of defendant's witnesses and therefore the trial court exceeded its authority in allowing such discovery. The State urges that appellant Kindred's failure to object to the State's motion or to the trial court's granting of the motion prior to trial waives any error in the trial court granting the discovery to the State.

So far as we can determine defendant Kindred is correct in that there is no statute, rule or case law expressly providing for discovery by the State of defense witnesses in a criminal case. However, it is our opinion that Kindred's failure to raise any objection to the discovery and willingly submitting the names of the witnesses to the State makes a discussion of the propriety of such discovery unnecessary in this opinion. It is axiomatic that a party may not sit idly by and permit the court to act in a claimed erroneous manner and after he is unsuccessful in the cause attempt to take advantage of the alleged error. *Moore* v. *State* (1972), 154 Ind. App. 482, 290 N.E.2d 472;

*Harris* v. *State* (1972), 154 Ind. App. 129, 289 N.E.2d 344; *Hensley* v. *State* (1969), 251 Ind. 633, 244 N.E.2d 225.

Finding no reversible error the judgment of the trial court is hereby affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 312 N.E.2d 100.