## FLOYD SWINEHART *v.* STATE OF INDIANA

[No. 1-1176A230. Filed March 7, 1978. Rehearing denied April 20, 1978. Transfer denied March 13, 1979.]

*James Lowenthal, Colman, Lowenthal & Loftman*, of Bloomington, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Terry G. Duga*, Deputy Attorney General, for appellee.

### STATEMENT OF THE CASE

LOWDERMILK, J.—Defendant-appellant Floyd Swinehart

(Swinehart) appeals after conviction in the Brown Circuit Court of second degree burglary,[1] auto banditry,[2] and safe burglary.[3]

## FACTS

During the early hours of July 17, 1975, one or more persons surreptitiously entered the Brown County Courthouse, forced open the safes in the Clerk's Office and Treasurer's Office, and departed with $516.16 as reward for the venture.

On June 4, 1976, after considering evidence described in this opinion in Issue Four, a jury concluded that Swinehart perpetrated that burglary.

We affirm.

## ISSUES

Swinehart raises five issues for review:

1. Did the trial court err in refusing to grant Swinehart a continuance attributed to the State?

2. Did the trial court err in admitting evidence obtained during a search of a third party's home and automobile?

3. Did the trial court err in admitting evidence concerning other crimes of which Swinehart had been convicted?

4. Did the State present sufficient evidence of probative value to prove beyond a reasonable doubt that Swinehart committed the offenses charged?

5. Did irregularities in the jury selection procedure deprive Swinehart of his right to trial by an impartial jury?

*Issue One*

Swinehart contends that he was forced to choose between his right to a speedy trial and his right to effective assistance of counsel.

1. IC 1971, 35-13-4-4(b) (Burns Supp. 1977).

2. IC 1971, 35-12-2-1 (Burns Code Ed.).

3. IC 1971, 35-1-61-1 (Burns Code Ed.).

A jury had been unable to reach a verdict in a prior trial of Swinehart and a codefendant, Wells. On the morning of the second trial, the State moved for dismissal of charges against Wells. When the trial court dismissed the charges against Wells, the possibility loomed that certain evidence suppressed during the first trial could be introduced in the second trial.

Swinehart moved for a continuance but insisted that it be attributed to the State. The trial court refused to grant a continuance attributed to the State, and Swinehart refused to seek a continuance attributed to himself.

The granting or denying of a continuance is within the discretion of the trial court. Even with a showing of surprise, there also must be a showing that defendant will be harmed by denial of the continuance. *King v. State* (1973), 260 Ind. 422, 296 N.E.2d 113.

Swinehart's attorney was appointed September 2, 1975, to represent him. The same attorney represented Swinehart in the prior trial in which the jury had been unable to reach a verdict. Swinehart's attorney had time and occasion to become well acquainted with the facts of the case before the second trial took place June 2-4, 1976. The dismissal of charges against Wells no doubt forced a change of strategy at trial, but the record does not indicate that Swinehart was denied effective assistance of counsel. The trial court did not abuse its discretion in refusing to grant a continuance upon the terms Swinehart dictated.

*Issue Two*

A single search warrant was issued authorizing the search of the homes and automobiles of both Swinehart and Wells. The evidence obtained as a result of the searches was suppressed at the prior trial of Swinehart and Wells because the affidavit in support of the search warrant was found to be deficient. Swinehart argues that he had standing to object at his second trial to the admission of evidence seized from Wells' home and automobile because the State created joint standing when the single search warrant was issued for the search of property of both Wells and Swinehart.

A search of a third party's property or home cannot be made the basis of a claim by a defendant for the exclusion of evidence, even if the search was made without probable cause. *Kirkland v. State* (1968), 249 Ind. 305, 232 N.E.2d 365.

The search warrant was issued as authorization for the search of the residence of Wells, the residence of Swinehart, and two automobiles, the ownership or possession of which was not stated. Swinehart does not allege that he had possession of Wells' home or automobile at the time they were searched or that he was present at the time they were searched.

Evidence unlawfully seized is excluded from trial as a means of making effective the protection of privacy. Finding standing in Swinehart in no way would serve the purpose of the exclusionary rule.

An invalid search warrant cannot provide a basis for a lawful search, but neither does it provide defendant with status or standing which he does not otherwise possess. Because the property searched belonged to a third party, Swinehart has no basis for a claim for exclusion of the evidence seized from the home and automobile of Wells.

*Issue Three*

Swinehart argues that the trial court erred when it admitted evidence concerning Swinehart's prior convictions for theft and safe burglary in Shelby County.

Evidence of criminal activity other than the crime charged may be admitted to show intent, motive, purpose, identification, or common scheme or plan. *Cobbs v. State* (1975), 264 Ind. 60, 338 N.E.2d 632.

The State introduced a certified copy of court records of the Shelby Superior Court showing that Swinehart had been convicted of safe burglary and theft in Shelby County and sentenced January 14, 1976. A law enforcement officer testified that the safe burglaries of which Swinehart had been convicted occurred in Shelbyville

during the late hours of August 15 or early hours of August 16, 1975. In each case the safe had been forced open in a manner similar to that used at the Brown County Courthouse on July 17, 1975.

The offenses for which Swinehart was being tried in Brown County and those for which he already had been convicted in Shelby County occurred only one month apart and reflected similarities in the procedures used. The trial court admonished the jury that the evidence of prior convictions should be used only in considering the possibility of a common scheme. We hold that the trial court did not err in admitting the evidence concerning Swinehart's prior convictions.

*Issue Four*

Swinehart argues that the State introduced insufficient evidence to prove beyond a reasonable doubt that Swinehart committed the offenses charged.

Swinehart and the State stipulated that a safe burglary and second degree burglary occurred at the Brown County Courthouse on July 17, 1975, and that, among other things, $100 in one dollar bills and rolls of coins of various denominations were taken during the burglary.

The Nashville Town Marshall (Wayt) saw Swinehart driving a 1965 or 1966 red Ford automobile bearing a license plate with a 73B prefix in Nashville at approximately 11:00 p.m. on July 16, 1975. The car was being driven slowly, and Swinehart and his passenger were looking up and down the streets. Wayt saw the same automobile again in Nashville between 1:00 and 1:30 a.m. on July 17, 1975.

A patrolman for the Brown County Sheriff's Department (Swift) observed a red 1966 Ford automobile bearing a license plate with a 73B prefix in Nashville between 1:00 and 1:30 a.m. on July 17, 1975. Swift identified Swinehart as the passenger in that automobile.

During a subsequent search of a red 1966 Ford automobile bearing a license with a 73B prefix (owned by former codefendant

Wells), officers discovered a roll of nickels, Swinehart's social security card, an Indiana map with all of the county seats marked, and money wrappers.

The safes in the Brown County Clerk's Office and Treasurer's Office were "peeled" by pounding loose and peeling back the fronts of the safes to reveal the locking mechanisms packed in fire clay. The fire clay was knocked out to allow the doors to be opened. The floor of the Treasurer's Office was covered with a fine greyish-white dust from the fire clay. Footprints appearing in the dust had been made by someone wearing tennis shoes.

The radio dispatcher at the Brown County Sheriff's Department heard a noise that sounded as if someone was pounding a hammer against heavy metal at approximately 2:00 a.m. on July 17, 1975. The radio dispatcher was working approximately fifty feet from the Brown County Courthouse when he heard the noise.

Witness Jim Dial saw a red 1965 or 1966 Ford automobile with license plate number 73B4355 traveling eastward on Road 44 toward Shelbyville between 3:00 and 3:30 a.m. on July 17, 1975.

Witness Jim Casey observed Swinehart using bills from a two-inch roll of one dollar bills to make a purchase at approximately 3:45 a.m. on July 17, 1975, in Shelbyville. Casey saw Swinehart in another store at approximately 4:00 a.m. that same morning and noted that a white powdery substance was on Swinehart's shoes.

The evidence set forth above provides a sufficient basis for the jury to conclude beyond a reasonable doubt that Swinehart participated in the burglary at the Brown County Courthouse on July 17, 1975.

*Issue Five*

Swinehart argues that he should be granted a new trial because of noncompliance with statutes prescribing the procedure for selection of prospective jurors.[4]

---

4. IC 1971, 33-4-5-2 (Burns Code Ed.) provides, in part:

"... Said commissioners shall ... select and deposit, in a box furnished by the clerk for that purpose, the names, written on separate slips of paper of uniform shape, size and color, of twice as many persons as will be required by law for

Swinehart alleges in his motion to correct errors and in this appeal that he learned of the improprieties in the jury selection procedure only four days before the deadline for filing of his motion to correct errors. He filed an affidavit indicating that the clerk and jury commissioners of Brown County had admitted that no jury box was used in selecting the jury panel. Furthermore, there was no record that the jury commissioners had taken an oath and the clerk had failed to enter a list of prospective jurors upon the order book of the court. Without citing support in the record for his statement, Swinehart asserts that eight of the twelve jurors who convicted him came from only two of the twelve precincts of Brown County.

In *Kark v. Central Greyhound Lines, Inc.* (1949), 119 Ind. App. 303, 308, 85 N.E.2d 277, 279, appellant sought a new trial because he discovered after trial that two members of the jury which heard the case were not selected in the manner prescribed by statutes. We quote from that opinion.

"Section 4-3306, Burns' 1946 Replacement, provides that the clerk shall record and certify the names of persons drawn for regular petit juries on the proper order books of the court. An

grand and petit jurors in the courts of the county, for all the terms of such courts, to commence with the calendar year next ensuing. Each selection shall be made as nearly as possible in proportion to the population of each county commissioner's district. . . ."

IC 1971, 33-15-22-1 (Burns Code Ed.) provides, in part:

". . . The clerk, having first well shaken the box, shall open the same in his office, and in the presence of the jury commissioners he shall publicly draw therefrom such number of names of competent persons as the judge of such court shall have ordered to be summoned as prospective jurors for such court. At such drawing the names of competent persons shall be first drawn for each court having criminal jurisdiction in the number specified by the court in such order. The clerk and the jury commissioners shall also, and in the same manner draw for each of such circuit, superior, juvenile, probate and other courts, respectively, the number of names of persons to serve as jurors for such courts, respectively, as the judges of such courts shall have specified in such written orders. The jurors, and each of them, shall serve three [3] months or for a lesser period as the judges of such courts, respectively, shall order, by written order duly entered sufficiently long before trial or grand jury sessions to permit counsel to know and to investigate the panel of jurors for such term or part of the term: Provided, That the order of names as listed in the panel and as called for service shall be the same order as that in which the names are drawn from the box, as herein provided. The clerk shall at the time of drawing such prospective jurors, enter a list of names so drawn, upon the order-book of the court, in the same order in wich the names are drawn from the box, and he shall attach his certificate of the fact. . . ."

examination of these records at any time during the term before trial would have disclosed these two persons were not members of the regular panel. Also, this situation could readily have been discovered on the voir dire examination. Parties who demand the right to have the provisions of these statutes complied with have a duty to use diligence in ascertaining whether they have been followed. In the event there has been an irregularity they must make timely objection to the trial court. It is too late to raise the objection made here after an adverse verdict has been returned."

An examination of the court's records before trial in the case at bar would have revealed the omission as to the oath of the jury commissioners and also as to the clerk's list of prospective jurors. Statements made during voir dire examination reveal that Swinehart was provided with names and addresses of prospective jurors before trial. If the addresses revealed a failure to provide proper representation of the entire county, Swinehart could have investigated before trial rather than after trial and could have offered timely objection.

Swinehart contends that, if he is deemed to have waived this issue by failure to object before trial, he should be granted a new trial because he did not have benefit of effective counsel.

A presumption exists that counsel for a criminal defendant is competent. The defendant bears the burden to produce clear and convincing evidence that the conduct of his counsel reduced the trial to a mockery of justice. *Logston v. State* (1977), 266 Ind. 395, 363 N.E.2d 975.

Swinehart has established that his counsel did not discover irregularities in the jury selection procedure before trial. We have concluded that such irregularities could have been discovered before trial.

IC 1971, 33-15-22-2 (Burns Code Ed.) provides as follows with reference to the statute prescribing use of the jury box:

". . . The provisions of this act [33-15-22-1 — 33-15-22-4] shall be construed to supplement and not to repeal the statutory provisions for special juries, for juries by agreement, for juries from other counties, for struck juries, and for special venires. This act

shall be construed liberally, to the effect that no indictment shall be quashed, and *no trial, judgment, order or proceeding shall be reversed or held invalid on the ground that the terms of this act have not been followed, unless it shall appear that such non-compliance was either in bad faith or was objected to promptly upon discovery and was probably harmful to the substantial rights of the objecting party.*" (Citations omitted) (Our emphasis)

Swinehart has cited no evidence of harm to his substantial rights. He likewise has cited no evidence that his trial was reduced to a mockery of justice.

The Constitution of the United States ensures all criminal defendants a trial by an impartial jury of the State and district where the crime was committed. The record presented to this court on appeal shows that Swinehart was convicted by an impartial jury after the State presented evidence of probative value proving Swinehart's guilt beyond a reasonable doubt. We find no basis for reversing that judgment.

This court notes that Swinehart was found guilty of three offenses and sentenced as follows:

| | |
|---|---|
| second degree burglary | 2-5 years |
| auto banditry | 1-5 years |
| safe burglary | 5-10 years |

The record reveals clerical error in the Commitment Order, which provides for imprisonment for a period of not less than one year nor more than ten years.

The second degree burglary charged was the effecting of safe burglary by breaking and entering. The automobile banditry charged was having an automobile available for escape following commission of the safe burglary. All three charges arose from a single transaction: the peeling of the safes at the Brown County Courthouse. Evidence sufficient to sustain the conviction for safe burglary also sustains the convictions for second degree burglary and automobile banditry, but the latter two offenses merge into the safe burglary as the offense for which the greatest penalty is provided.[5]

---

5. See *Sansom v. State* (1977), 267 Ind. 33, 366 N.E.2d 1171.

The imposition of an incorrect sentence constitutes fundamental error. A court on review cannot ignore fundamental error that is apparent on the face of the record. *Kleinrichert v. State* (1973), 260 Ind. 537, 297 N.E.2d 822; *King v. State* (1974), 161 Ind. App. 196, 314 N.E.2d 805.

The judgment of the trial court is now affirmed as to the conviction for safe burglary.

The cause is remanded to the trial court with instructions to vacate the judgment and sentence on the conviction of second degree burglary; to vacate the judgment and sentence on the conviction of automobile banditry; to correct error in the Commitment Order so that it properly provides for imprisonment for a period of not less than five years nor more than ten years; and to instruct the clerk to furnish a certified copy of the corrected Committment Order to the warden of the institution where Swinehart is incarcerated.

Robertson, C.J. and Lybrook, J. concur.

NOTE—Reported at 372 N.E.2d 1244.