**Johnny Wayne LEE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–878A282.

Court of Appeals of Indiana, Second District.

April 29, 1981.

Harriette Bailey Conn, Public Defender, David P. Freund, Deputy Public Defender, Kurt A. Young, Research Asst., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., William E. Daily, Asst. Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Johnny Wayne Lee appeals his convictions for theft,[1] second degree burglary,[2] and safe burglary.[3] Four issues are presented for review:

I. Whether the trial court erred in ruling that Lee had no "standing" to contest the legality of a search and seizure.

II. Whether the trial court erred in not granting Lee's motion for a mistrial following the court's admonishment of a witness in the jury's presence.

III. Whether the trial court erred in denying Lee's motion for a mistrial based upon the State's questioning of certain witnesses.

IV. Whether the evidence was sufficient to support each of Lee's convictions.

We affirm.

## I.

On the early morning of November 19, 1973, the Moose Lodge in Dunkirk was burglarized and several items stolen therefrom. Among the items taken were one hundred thirty-five to one hundred fifty quarts and fifths of liquor, twelve T-bone steaks, one case of shrimp, one case of chicken, two boxes of mushrooms, fifteen cartons of cigarettes, a black & white television, a shotgun, and a safe containing $309.00, two hundred of which was in $100 bills. The coins from the jukebox and cigarette machines were also taken. A tire tool was found on top of a cigarette machine.

A witness, Robertson, testified that at about 3:30 a. m. on the morning of the burglary while getting ready for work he heard a disturbance outside his house in Eaton, Indiana. Robertson looked through a window, saw three men, and went outside to investigate. The record shows that Robertson observed the men trying to lift an object which appeared to be a safe into a near-by trailerhouse from an automobile. After asking the men if they needed any help and noticing a heavy-set woman present, he returned home and called the police.

A guest at the trailer testified that on the day before the Moose Lodge burglary Lee and another stated their intention to go to Dunkirk to make some money. The witness further testified that the next time she saw Lee was about 3:00 a. m. on the morning of November 19th, when he and three others

---

1. I.C. 35–17–3–3 (Burns Code Ed.1975) (current version at I.C. 35–43–4–2).

2. I.C. 35–13–4–4 (Burns Code Ed.1975) (current version at I.C. 35–43–2–1).

3. I.C. 35–1–61–1 (Burns Code Ed.1975) (repealed 1977).

were attempting to unload a safe from the trunk of a car. After the unloading was interrupted as noted above, Lee and his companions left with the safe in a beige 1966 Chevrolet, stating that they should leave because Robertson might call the authorities.

In response to Robertson's call, Eaton Town Marshal William Dodds went to the trailer to investigate. Dodds spoke briefly with the woman occupant, but apparently missed Lee and his companions by five or ten minutes. Dodds left the scene and contacted the Delaware County Police.[4] He returned to the trailer about twenty-two hours later but received no answer when he knocked on the door even though he thought he could hear someone inside. Dodds did, however, observe and take custody of several broken but sealed Gin, Scotch, and Vodka bottles lying on the ground outside the trailer. Dodds also noticed a partial shrimp stuck to the bottom of a Gin bottle.

Dodds returned to the trailer with a search warrant at about 11:00 a. m. on November 20th. After knocking on the door and being allowed to enter, Dodds immediately observed an empty shrimp box, a half empty whiskey bottle, and change in a large amount. He then advised the person answering the door that he had a search warrant for the premises. One of the two persons present at the time was Lee, who was asleep. Dodds woke Lee up, read him his rights and placed him under arrest. Several items were seized in the search of the trailer: $144.40 seized from Lee, including one $100.00 bill; one quart of Black Velvet Canadian Whiskey, which was about half gone, serial number 45523774; 3 boxes of cooked floured beef patties with gravy, with lot numbers, one box lot numbered 290, 2 boxes with lot numbers of 304; 11 boxes of New Orleans brand Shrimp, lot number 2613; 10 T-bone steaks wrapped in aluminum foil; two 12 gauge shotgun shells; 18 quarter wrappers, 20 nickel wrappers; 1 roll of trash bags, green in color; and 1 bag of pepperoni slices for pizza, about 5 pounds. Many of these articles were later admitted into evidence.

Upon questioning, Lee stated he was a visitor at the trailer, and indicated he was visiting a person who was himself a visitor at the trailer. When asked about the whiskey, the shrimp, and the meat Lee claimed that he had purchased the items for $50.00 the day before in New Castle. Further questioning disclosed that Lee was unemployed and claimed he obtained his money by playing poker.

At trial Lee objected to the search of the trailer on grounds that the warrant was defective. Dodds's testimony and the items seized were also objected to as fruits of an illegal search. After a lengthy suppression proceeding held out of the jury's presence the trial court agreed with Lee's contention that the warrant was defective,[5] but refused to suppress the evidence because Lee failed to demonstrate a sufficient possessory interest in the premises.

At the time of Lee's trial the leading case on "standing" to contest a search was *Jones v. United States* (1960) 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. In *Jones* the Court focused upon whether the person seeking to challenge a search was a "victim" of the search or seizure. 362 U.S. at 261, 80 S.Ct. at 731. Two alternative holdings were announced: the first was the "automatic standing" rule which allowed a challenge to an allegedly illegal search by one charged with a crime in which the possession necessary to establish standing was also an essential element of the crime;[6]

---

4. The town of Eaton is located in Delaware County.

5. The warrant only authorized the search of an automobile.

6. After several years of erosion, *see Brown v. United States* (1973) 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (rule applies only where offense charges possession of the seized items at the time of the contested search), the Supreme Court totally abandoned the automatic standing rule in *United States v. Salvucci* (1980) 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619. Our courts have not yet determined whether the Indiana Constitution requires a result different from that reached in *Salvucci*.

secondly the Court ruled that "anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress." 362 U.S. at 264, 267, 80 S.Ct. at 732–33, 734.

The "legitimately on the premises" holding of *Jones* was overturned in *Rakas v. Illinois* (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. In *Rakas* the Court merged standing analysis with substantive fourth amendment analysis in order to focus upon whether "the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." 439 U.S. at 140, 99 S.Ct. at 429. In substantive terminology our primary concern is whether Lee had a "legitimate expectation of privacy" in the place searched so as to claim the protection of the fourth amendment. *Id.* at 143, 99 S.Ct. at 430 (citing *Katz v. United States* (1967) 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576). The *Rakas* Court stressed, though in a footnote, that a legitimate expectation of privacy "means more than a subjective expectation of not being discovered," 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12, and is not controlled by "arcane distinctions developed in property and tort law between guests, licensees, [and] invitees." *Id.* at 143, 99 S.Ct. at 430.

▮ Lee contends he had a legitimate expectation of privacy in the trailer because he was a guest there for three days (November 18, 19 and 20 of 1973), and because he was asleep at the time of Dodds's search. His situation, Lee argues, is very close to the factual situation of *Jones* which the Court in *Rakas* found to demonstrate a legitimate expectation of privacy. We disagree. In *Jones* the defendant had exclusive control of a friend's apartment, was given a key to let himself in, kept personal possessions in the residence, and the lessee was away at the time of the search. *See Rakas v. Illinois*, 439 U.S. at 141, 149, 99 S.Ct. at

429, 433. In contrast Lee was one of four persons sharing the trailer, the lessee of the trailer was present during the three day period, the record shows that Lee actually spent very little time at the trailer during his stay there, and Lee characterized himself as a guest of another who was merely a guest at the trailer. Lee points to no evidence which shows that he had a key to the trailer, nor is there evidence that Lee kept any personal items, other than the stolen goods, on the premises. At best Lee has demonstrated a subjective expectation of not being discovered; clearly not an interest which the fourth amendment was designed to protect. *See Rakas v. Illinois*, 439 U.S. at 142, 99 S.Ct. at 429–30; *United States v. Hodge* (7th Cir. 1979) 594 F.2d 1163, 1164–65; *Johnson v. State* (1979) Ind., 390 N.E.2d 1005; *Pollard v. State* (1979) Ind., 388 N.E.2d 496; *Kindred v. State* (1st Dist. 1974) 160 Ind.App. 418, 312 N.E.2d 100. *Compare Brames v. State* (1980) Ind., 406 N.E.2d 252.

▮ Lee also contends that he demonstrated a legitimate expectation of privacy by claiming ownership of the goods seized. *Rakas v. Illinois*, 439 U.S. at 142 n. 11, 99 S.Ct. at 430 n. 11. This argument is without merit for two reasons. First, just as one wrongfully on the scene cannot contest a search of the premises, *id.* at 141 n. 9, 99 S.Ct. at 429 n. 9, one in wrongful possession of goods which are the *fruits* of a crime, without more, should have no standing to object to their seizure. Secondly, just as mere possession no longer confers automatic standing, *United States v. Salvucci, supra*, the United States Supreme Court recently held that a mere claim of ownership was alone not enough to confer the right to challenge a search. In *Rawlings v. Kentucky* (1980) 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633, the Court rejected an argument very similar to that advanced by Lee. In so doing the Court stated:

"Petitioner contends nevertheless that, because he claimed ownership of the drugs in Cox's purse, he should be entitled to challenge the search regardless of his expectation of privacy. We disagree.

While petitioner's ownership of the drugs is undoubtedly one fact to be considered in this case, *Rakas* emphatically rejected the notion that 'arcane' concepts of property law ought to control the ability to claim the protections of the Fourth Amendment. See 439 U.S., at 149–150, n. 17, 99 S.Ct., at 434, n. 17. See also *United States v. Salvucci*, 448 U.S. at 90–93, 100 S.Ct., at 2552–2553. Had petitioner placed his drugs in plain view, he would still have owned them, but he could not claim any legitimate expectation of privacy. Prior to *Rakas*, petitioner might have been given 'standing' in such a case to challenge a 'search' that netted those drugs but probably would have lost his claim on the merits. After *Rakas*, the two inquiries merge into one: whether governmental officials violated any legitimate expectation of privacy held by petitioner." *Id.* 100 S.Ct. at 2561–62.

Under the circumstances we hold that Lee has failed to demonstrate a legitimate expectation of privacy in either the trailer or the items seized, and accordingly find no error in the trial court's ruling.

## II.

Lee next argues that the trial court erred in not granting his motion for a mistrial following the court's admonishment of Jackson, an accomplice, in the jury's presence. Lee's contention is premised upon the following exchange:

"Q. Ok would you please state your full name?

. . . .

A. Earl Franklin Delano Jackson.

Q. Calling your attention to the 19th day of November, 1973 do you recall that time?

. . . .

A. I don't remember.

. . . .

Q. You don't remember the question, or you don't know what you were doing on the 19th day of November, 1973?

A. I don't remember what I was doing on the 19th day (interpose)

Q. Ok.

A. of November.

Q. 1973?

COURT: MR. CLAMME HAVE YOU, AS ATTORNEY FOR THE WITNESS, HAVE YOU INFORMED THE WITNESS AS TO ANY MATTERS WHICH ARE CONTAINED IN 9–1601(a)?

MR. CLAMME: Yes your Honor.

COURT: (interpose) WITH REGARD TO PERJURY? FALSE SWEARING? HAVE YOU ALSO EXPLAINED TO HIM THAT PERJURY WHICH PERTAINS TO A MATERIAL POINT, AND AS TO WHAT THE PENALTIES FOR PERJURY ARE? DID YOU INFORM HIM?"

We note first that the record does not show a timely specific objection and a motion for a mistrial prompted by the trial court's statements or questions. Any error is therefore waived. Even if preserved Lee's contention is meritless. *Meyers v. State* (1977) 266 Ind. 513, 364 N.E.2d 760, addressed a similar question:

"During the examination of Richard Winn, the trial court warned the witness against committing perjury. Thereafter the court twice requested that the deputy prosecutor examine Winn's testimony and determine whether a charge of perjury should be brought against Winn. This was improper. It is the function of the prosecuting attorney, not the court, to investigate crimes and bring criminal charges. The practice of the court threatening a witness with perjury charges during trial poses unnecessary dangers to the integrity of the trial and to public respect for the courts even in non-jury trials such as appellant's. A witness may be intimidated so as to be unable to give evidence effectively. *State v. Lawrence*, (1954) 162 Ohio St. 412, 123 N.E.2d 271. The impression may be given that the judge has not heard the matter in a fair and impartial manner,

demeaning the public image of the judiciary. See *Dixon v. State*, (1972) 154 Ind. App. 603, 290 N.E.2d 731. In this case Winn probably was not deterred from giving his testimony, since the damaging perjury threats were made after the conclusion of his testimony, and we cannot find that the trial court's remarks exhibited such prejudice against appellant or his defense as to deny appellant a fair trial. See *Owens v. State*, (1971) 255 Ind. 693, 266 N.E.2d 612. We strongly recommend, however, that trial courts avoid such remarks." 364 N.E.2d at 763.

■ We agree that the trial court should avoid making such remarks but here, as in *Meyers*, Lee has not shown that he was prejudiced by the questions. Both before and after the trial court's inquiry as to Jackson's familiarity with perjury, his answers were unresponsive or consisted of "I don't remember." We find no error requiring reversal.

### III.

■ Lee next contends that the State's questioning of Jackson and another accomplice, Rhum, after both had indicated an unwillingness to testify was an attempt to inflame the jury and improperly advance the State's theory of the case. No timely objection on this ground is shown in the record. The continuing objection referred to in Lee's brief is based upon the testimony being the fruit of an illegal search and seizure. The other objections raised during Jackson's testimony concerned questions which had previously been asked and answered and alleged attempts by the State to impeach its own witness. On this latter point we note that the record shows Jackson to have been a less than exemplary witness whose testimony is replete with examples of unresponsive answers, hostility, and opportune lapses of memory. Many of the repeated questions were aimed at refreshing Jackson's memory and we think the prosecutor was within his prerogative to attempt to do so.

As to the other accomplice, Lee's objection appears to be that Rhum was questioned despite the fact that the State knew he would refuse to answer. The record shows that Rhum was asked only three questions in the jury's presence: his name, his address, and whether he was in Dunkirk with Lee on November 19, 1973. To this latter question Rhum asserted his fifth amendment right to not answer on the grounds of possible self incrimination. The remainder of Rhum's "testimony" came during a proceeding out of the jury's presence where Rhum made it clear he would not respond to any questions, immunity grant and direct contempt citation notwithstanding.

. There was no error in the attempt to question Rhum. We do not think the State should be placed in the intolerable position of having to anticipate a witness's refusal to answer questions. Similarly, we find no error in the State's request when the jury returned to ask Rhum "those questions which were asked out of the presence of the jury." The record shows this was done on the trial court's suggestion and solely in order to preserve the State's allegation of error. It was not anticipated that the questions would in fact be posed to the witness. In summary, the trial court was very aware of the potential for abuse in this situation and went to great lengths to avoid prejudicing the defendant. Under the circumstances Lee has failed to show an abuse of discretion by the trial court in denying his motion for a mistrial. *See Ballard v. State* (1974) 262 Ind. 482, 318 N.E.2d 798.

### IV.

Lee's last contention is that the evidence was insufficient to sustain each of his convictions. When sufficiency of the evidence is argued we neither judge the credibility of the witnesses nor weigh their testimony, but rather look only to the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the lower court's determination the convictions will not be disturbed. *Hall v. State* (1978) 269 Ind. 24, 26, 378 N.E.2d 823, 826; *Jones v. State* (1978) 268 Ind. 640, 643, 377 N.E.2d 1349, 1351.

■ Lee concedes the State proved that the crimes of burglary, theft, and safe burglary were perpetrated against the Dun-

kirk Moose Lodge on November 19, 1973. Lee's sole argument is the State failed to show that the offenses were committed by him. Theft, burglary, and safe burglary may be proved by circumstantial evidence alone. *E. g., Willard v. State* (1980) Ind., 400 N.E.2d 151; *Lisenko v. State* (1976) 265 Ind. 488, 355 N.E.2d 841. The evidence most favorable to the State is set forth in part I, *supra.* Lee's sufficiency argument is apparently premised upon the position that the items taken from the trailer by Marshal Dodds during his search were illegally seized, but we have previously determined that the evidence was properly admitted at trial. The inference of guilt is further strengthened by Lee's flight when attempting to unload the safe early on the morning of the nineteenth for fear that Robertson would call the authorities. *Cf. Thomas v. State* (1970) 254 Ind. 561, 563, 261 N.E.2d 224, 225 (attempted escape competent to show consciousness of guilt). We think it clear that from the evidence set forth herein, a reasonable trier of fact could conclude Lee participated in the Dunkirk Moose Lodge burglary. *See Swinehart v. State* (1st Dist. 1978) Ind.App., 372 N.E.2d 1244, 1247–48.

Judgment affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.