CHARLES WESLEY MOSS *v.* STATE OF INDIANA.

[No. 1-675A112. Filed March 30, 1976.]

*Forrest H. Lanning*, Clark County Public Defender, of Jeffersonville, for appellant.

*Theodore L. Sendak*, Attorney General, *Charles M. Russell*, Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant, Charles Wesley Moss (Moss) and William Keith Thomas were charged by information with second degree burglary.[1]

## FACTS OF THE CASE:

On August 22, 1974, Moss and William Keith Thomas were in an AMC Rambler owned by Moss' sister, Leatha Moss, which she had loaned to Charles Lay who was driving. The three went to Louisville, Kentucky, where Thomas purchased five quarters of heroin and then returned to Jeffersonville, Indiana, where Moss injected himself with two quarters of heroin and Thomas injected himself with three quarters of

---

1. Burglary—First, Second, and Third Degrees, Penalties, IC 1972, 35-13-4-4 (Burns 1975 Supp. § 10-701(b)).

the same drug. While so driving the Rambler developed engine trouble and stopped across the street from the B & S Truck Service in Jeffersonville. Thomas had told the driver prior to stopping to stop so that he could enter the premises and take some tools which he could sell and get money for more drugs. Moss said he was shortly out of prison and wanted no part of it. All three men then left the Rambler on foot and separated.

Later Thomas cased the B & S building, after which he kicked in the door, entered and looked around for tools he could take.

Earlier that evening Henry L. Cosby, a security guard, had driven by B & S at 8:30 and checked doors, et cetera, and everything was secure. On a round at 11:20 P.M. Mr. Cosby saw the Rambler stopped in the street. He found an outside door of B & S open and had the owner of B & S called. The owner, Francis Ballard, came down and he and Mr. Cosby entered the building together, where they found Thomas hiding under a truck. The police were called and Thomas was arrested and jailed. Later Thomas entered a plea of guilty to the lesser offense of "entering to commit a felony."

A further investigation that night revealed the office had been ransacked and things moved all around in the building. Heavy tools had been removed from B & S and there were boxes of small tools set just inside the door for removal. A pair of men's shoes were seen setting in front of the truck and a further investigation showed Moss hiding above the drive shaft of the truck and all hidden except they could see his arms. He was forced out and at that time gave up and holding his hands over his head said to the arresting officers, "You got me; I give up." He was in his sock feet and he asked for and received his shoes.

In the meantime Officer Brewer shined his flashlight into the Rambler and saw a .32 caliber pistol on the front floor board of the car. The trunk was opened (the car keys had

been left in it) and searched and a quantity of tools belonging to B & S were found therein.

## MOSS FILES MOTION TO SUPPRESS:

Moss filed a motion to suppress evidence for the reason there was an illegal search of the Rambler which was later denied by the court after a hearing.

## ISSUES PRESENTED:

Moss presents six specifications of error which we shall set forth separately as they are discussed.

## DISCUSSION:

Appellant discusses and argues his specifications 1, 3 and 6 together and we shall also treat them in that manner.

*Specification 1* is that the verdict of the jury was not supported by sufficient evidence in that:

(a) There was no evidence Moss was guilty of second degree burglary.

(b) There was no evidence of Moss' "intent."

(c) Moss did not have the mental capability at the time of the commission of the offense to formulate specific intent.

*Specification 3.* Trial court erred in refusing Moss' motion for directed verdict at close of State's evidence.

*Specification 6.* The jury's verdict was contrary to law.

(a) Thomas (co-defendant) confessed to the crime and vindicated Moss.

Moss vigorously urges that the prosecution was only able to show that Moss was found in the building under a truck in his sock feet and the court and jury must assume his intent from circumstantial evidence which failed to prove his guilt beyond a reasonable doubt.

Moss further urges under specification 1 that there was no

evidence of "intent." Moss contends that evidence of mere presence at the scene of the crime is not sufficient to prove a requisite criminal intent.

While we agree with the statement in the sentence immediately above we find in the case at bar that there is evidence beyond mere presence which is sufficient to support a finding of intent. It is true Moss left the parked car before the door was broken in, as did Mr. Lay. However, when Thomas and Moss were apprehended inside B & S stolen loot had been placed in the car which they had parked across the street and items were boxed inside B & S for loading. Further, when apprehended Moss stated to police, "You got me; I give up", which would indicate he knew he had done something for which he might be expected to be arrested.

Finally, Moss' hiding to avoid detection in the burglarized building is further evidence of his intent to commit a felony and like "flight" may be considered along with all the other circumstantial evidence in this case to sustain a finding of that intent. *Long* v. *State* (1975), 166 Ind. App. 282, 335 N.E.2d 631. *Brown et al.* v. *State* (1976), 168 Ind. App. 440, 343 N.E.2d 790.

Also under specification 1 Moss argues he did not have the mental capability to formulate specific intent to commit the crime charged inasmuch as he had injected "2 quarters" of heroin shortly before commission of the offense.

Dr. Carl Taylor of the Louisville General Hospital, a resident for one and one-half years with six months work as an Emergency Medicine Resident which included treating drug addicts, testified for Moss. In answer to a hypothetical question as to Moss' ability to form an intent after taking the two quarters of heroin two or three hours previous to a tense situation and all the time fearing the police and being sent to prison, and after he had said previously he would not do

an act, the doctor stated, "I have an opinion that he would be able to perform the requisite intent and which is a legal term."

However, in later testimony Dr. Taylor in response to another hypothetical, stated a person who had two quarters of heroin in his system could not specifically act and form a normal intent.

This evidence of the doctor, together with his further evidence on cross examination that he did not actually know the amount of heroin taken by Moss, leaves a conflict in the evidence that necessarily was determined by the jury. *McMinoway* v. *State* (1972), Ind. App., 283 N.E.2d 553, 555.

In addition to the conflicting testimony as to the effect of the drugs we note that Moss had sufficient presence of mind to take advantage of a unique hiding place on top of the drive shaft of a truck within the building. Further, before the building was entered Moss knew he should not assist in the burglary and had the apparent mental capacity to say that he would not assist, yet he did so.

This court, in *Stiles* v. *State* (1973), 156 Ind. App. 668, 298 N.E.2d 466, 467, stated the "sufficiency of evidence rule" as follows:

". . . the rule is that a conviction must be affirmed if there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Gann* v. *State* (1971), [256] Ind. [429], 269 N.E.2d 381; *Asher* v. *State* (1969), 253 Ind. 25, 244 N.E.2d 89. The court will not weigh the evidence nor resolve the question of credibility, but will look to the evidence most favorable to the state and the reasonable inferences therefrom which support the verdict of the jury. . . . (Cases cited omitted.)"

All of the above was sufficient for the jury to infer not only that Moss had been an accomplice in the burglary but that he had sufficient mental capacity to formulate and did have an intent to commit a felony in the B & S building.

We find no merit in Moss' contention the verdict was contrary to law as there was a conflict in the evidence as to the effect of heroin on his being able to form an intent to commit a felony.

"It is only when the evidence is without conflict and leads to but one reasonable conclusion, that the verdict will be disturbed as contrary to law." *Warren* v. *State* (1963), 243 Ind. 508, 517, 188 N.E.2d 108.

The jury's verdict was not contrary to law.

Moss' claimed error in the court's refusal to grant his motion for directed verdict at the close of the State's evidence is untenable. Our Supreme Court said in *Warren* v. *State, supra,* at page 518, that a peremptory instruction of acquittal in a criminal case is only proper where there is a total absence of probative evidence upon some essential issue, or where there is no conflict in the evidence and it is susceptible to but one inference which is in favor of the accused.

The *Warren* court further held that a defendant waived his claimed error by presenting evidence in his defense subsequent to the overruling of the motion. *Warren* v. *State, supra,* at page 518. See also *Hancock* v. *State* (1971), 256 Ind. 697, 700, 271 N.E.2d 731.

In *Pinkston* v. *State* (1975), 163 Ind. App. 633, 325 N.E.2d 497, Judge Garrard held that the same rule basically applies under the new rules. See Indiana Rules of Procedure, Trial Rules 41(B) and 50. A motion for a directed verdict (now a motion for judgment on the evidence, TR. 50), presents the same issue on appeal as a claim of insufficiency of the evidence. Under TR. 50, any error made by the trial court in failing to grant the motion is deemed corrected by evidence thereafter offered or admitted. Thus, a determination that the evidence is sufficient as a whole also decides the question of whether the motion for judgment on the evidence was properly denied. *Board of Com'rs of Delaware County* v. *Briggs* (1975), 167 Ind. App. 96, 337

N.E.2d 852. Having found the evidence as a whole sufficient, there was no error in denying the motion for judgment on the evidence.

Specification 2 is that the court erred in failing to suppress and exclude evidence seized unlawfully in violation of defendant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

A police officer shined his flashlight into the car and saw the .32 caliber pistol on the front floor board in *plain view*. The car was parked directly across the street from the broken door of the B & S building. A search of the locked trunk revealed items of evidence removed from the B & S building. Moss urges the court erred in not suppressing this evidence.

The evidence of all three men in the car as well as the owner, Leatha Moss, was that the car was owned by Leatha Moss. She had merely permitted Mr. Lay to use the car.

The property searched was that of another and not owned by Moss and he had no right to possession. The right to object against unreasonable search and seizure is personal and is of no avail to Moss. The trial court ruled correctly in refusing to suppress the evidence. *Butler* v. *State* (1972), 154 Ind. App. 361, 289 N.E.2d 772, 775; *Kindred* v. *State* (1974), 160 Ind. App. 418, 312 N.E. 2d 100.

Moss' specifications 4 and 5 are that the admission of the gun into evidence and evidence concerning the gun prejudiced the jury, that there was no evidence the gun was used in the alleged offense and no evidence of a probative value tendered which would tie the gun to Moss by a probative, valid nexus; that the gun was introduced without a proper foundation being laid; and that the gun was admitted solely for its inflammatory implication over Moss' objections.

While it is true that there was no evidence the gun was connected with Moss, that the owner was never known, and

that the gun was not used in the B & S burglary, we now hold the introduction of the gun into evidence was proper.

The gun was a material part of the State's evidence in that it was seen in plain view by the officer and thus entitled the officer to make a search of the automobile used by Thomas, Moss and Lay to secure evidence material to the trial of the cause. The gun was further relevant in that it had a tendency to establish credibility of the witness, i.e., the gun was actually in the car and was recovered.

"Evidence is relevant which throws or tends to throw light on the guilt or innocence of the defendant." *McPhearson* v. *State* (1969), 253 Ind. 254, 253 N.E.2d 226.

Also in *McPhearson* v. *State, supra,* our Supreme Court said:

". . . Although the pistol had no direct bearing on the specific charge brought against appellant, to-wit, robbery while armed with a knife, it was certainly relevant evidence tending to add credence to the story of the state's principal prosecuting witness, Hodgin, that the robbery actually happened in the manner in which he testified that it did. Any evidence which substantiates the credibility of a prosecuting witness on the question of guilt is material and relevant, and may be properly admitted. . . ." 253 N.E.2d at 227, 228. See also *McCurdy* v. *State* (1975), 263 Ind. 66, 324 N.E.2d 489.

Inasmuch as the gun was properly admitted into evidence and Moss made no objection to the State's waving the same in front of the jury, Moss can not now be heard to complain. There was no error in the admission of the gun into evidence.

Finding no error in the record the judgment is affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 344 N.E.2d 859.