**Larry CHUBB, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 49S02–9409–CR–855.

Supreme Court of Indiana.

Sept. 8, 1994.

As Corrected Sept. 15, 1994.

Rehearing Denied Dec. 15, 1994.

David L. Rimstidt, Rimstidt, Yackey & Ladd, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

DICKSON, Justice.

Charged with appearing in a public place in a state of nudity and there fondling the genitals of another, the defendant, Larry Chubb, was convicted of public indecency, a class A misdemeanor. Ind.Code § 35–45–4–1. The Court of Appeals reversed, finding that the defendant's genital nudity inside a stall in a public restroom did not occur in a public place and that the police officer's fondling testimony was insufficient to support

the conviction. *Chubb v. State* (1994), Ind. App., 627 N.E.2d 842. We grant the State's Petition To Transfer and affirm the conviction.

The defendant's appeal raises the following issues: (1) whether the charged conduct occurred in a public place; (2) whether reversal is required because of juror inattentiveness; (3) whether prosecutorial misconduct occurred during closing argument; and (4) whether the State improperly used peremptory challenges.

According to the evidence favorable to the judgment, on November 29, 1991, the defendant was in a public men's restroom in an Indianapolis shopping mall. Indianapolis Police Officer Walter Sanders entered the restroom and approached one of three urinals adjacent to three stalls with partitions and doors. The officer looked over the partition into the first stall, where the defendant lowered his pants, sat down, and began to masturbate. The officer left the restroom, briefly consulted with his partner, and then returned to the urinal next to the defendant's stall. After all of the other restroom occupants had left, the defendant stood up, reached over the partition, placed his arm around the officer and began to rub the officer's chest. The defendant then, continuing to masturbate, motioned for the officer to come around to the stall next to the defendant's stall. When the officer obliged, the defendant reached over the partition between the two stalls and began to fondle the officer's genitals. The officer promptly arrested the defendant.

### 1. *Public Bathroom Stall As "Public Place"*

The defendant contends that the trial court erred by denying his motion for judgment on the evidence at the conclusion of the State's case. He asserts that because his conduct occurred in a private stall with the door secured, he was not in a "public place" as required for the offense of public indecency.[1]

---

1. In pertinent part, Public Indecency is defined in Ind.Code Ann. § 35–45–4–1 as follows:

(a) A person who knowingly or intentionally, in a public place:

   *   *   *   *   *   *

(3) appears in a state of nudity; or

The State responds that the bathroom stall, even with its door shut and secured, was a public place because its partitions were not of sufficient height to prevent viewing by others, and that, even if deemed a private place, the defendant's actions transformed the stall into a public place when the defendant leaned over the partition into the adjoining stall where the officer stood.

▮ Because the defendant presented evidence on his own behalf following the trial court's denial of his motion for judgment on the evidence at the close of the State's case in chief, we will not review such ruling but rather will treat the issue as one of general insufficiency of evidence. *Kuchel v. State* (1991), Ind., 570 N.E.2d 910, 915; *Moss v. State* (1976), 168 Ind.App. 605, 612–13, 344 N.E.2d 859, 863. See also *Harris v. State* (1981), Ind.App., 416 N.E.2d 902, 905. In reviewing for sufficiency of evidence, we consider only the probative evidence and reasonable inferences supporting the verdict, disregarding credibility and weight, and will affirm the conviction if a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Loyd v. State* (1982), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

▮ The offense of public indecency requires the commission of proscribed conduct "in a public place." Ind.Code § 35–45–4–1(a). We agree with the discussion and conclusion of our Court of Appeals that a restroom stall, enclosed by partitions of sufficient height so that users' conduct or condition is not visible to the casual public eye, is *not* a public place. *Chubb,* 627 N.E.2d at 844.

This is also consistent with the rule that criminal statutes must be narrowly construed. *See, e.g., Utley v. State* (1972), 258 Ind. 443, 446, 281 N.E.2d 888, 890; *Coleman v. State* (1990), 253 Ind. 627, 631, 256 N.E.2d 389, 391. The defendant's genital nudity in the closed stall did not constitute public indecency. To hold otherwise would effectively render the ordinary use of a public restroom a crime.

▮ However, the charging information, although asserting only one count and charging but a single offense, described more than a single act.[2] It alleged not only genital nudity but also the fondling of another person's genitals. Officer Sanders testified that such act occurred while the defendant was reaching across the stall partition. Such conduct exceeded the bounds of the private area and thereby constituted criminal conduct in a public place. *Thompson v. State* (1985), Ind. App., 482 N.E.2d 1372, 1376.[3]

Commenting generally upon the relative height of the defendant and the partition, the Court of Appeals opined that the charged conduct "did not occur in the manner described by the officer," *Chubb,* 627 N.E.2d at 844, and concluded that the determinative evidence was "so improbable as to be without probative value." *Id.* We disagree. The record contains a photographic exhibit which demonstrates that the top of the restroom stall partition reached a height only slightly above the defendant's armpits when he was standing flat-footed. Record at 303. Based on this exhibit, the jury could reasonably have found that, with effort, the defendant could have committed the act described by

(4) fondles the genitals of himself or another person; commits public indecency, a class A misdemeanor.

(b) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of covered male genitals in a discernibly turgid state.

2. In the charging information, the defendant was accused conjunctively of "appearing in a state of nudity *and* fondl[ing] the genitals of [the officer]." Record at 4 (emphasis added). When an indictment or information conjunctively charges acts which are disjunctively proscribed in the criminal statute, only one of the acts need be proven in order to support a conviction. *See Booker v. State* (1979), 270 Ind. 498, 503, 386 N.E.2d 1198, 1201; *Davis v. State* (1985), Ind. App., 476 N.E.2d 127, 132.

3. In the present case, the defendant was not charged with fondling himself or another within the same stall. By our decision today, we do not imply that such conduct would fail to satisfy the "public place" element of the public indecency statute if accompanied by audible sounds, visible movement, or otherwise imposing upon the public.

Officer Sanders. We find that the officer's testimony was not inherently improbable and that the evidence was sufficient to support the conviction.

### 2. Juror Inattentiveness

■ The defendant contends that he was denied a fair trial because one of the jurors slept through part of the court's final instructions, defense counsel's closing argument, and part of the testimony of one of the defense witnesses. This claim was not accompanied by a contemporaneous objection at trial but was presented in the defendant's motion to correct error, supported by an affidavit of a courtroom spectator. The factual substance of the affidavit consists of the following assertion:

> I observed that one of the jurors was asleep during certain parts of the testimony, closing argument of counsel, and final instructions by the trial judge.

> I informed counsel for the defendant of this fact following the return of the jury with its verdict.

Record at 25.

To prevail on this claim, the defendant must demonstrate two elements, the juror was actually inattentive and the juror's inattention resulted in actual prejudice. *Whiting v. State* (1987), Ind., 516 N.E.2d 1067, 1068.

The State asserts that these burdens were not met. First, it argues, one person's observation that a juror appeared to be sleeping does not necessarily establish whether the juror was actually asleep or merely pondering the evidence with his eyes closed. Second, the State contends that the affidavit fails to establish how long the juror slept or through which parts of the proceedings the juror slept. Thus, the State argues, the defendant failed to meet his burden of proving how he was prejudiced by the possibility of a sleeping juror.

■ Because the alleged juror inattentiveness was not contemporaneously brought to the trial court's attention, it is impossible to know whether the juror was actually sleeping, and the conclusory statement in the post-trial affidavit is not determinative. Furthermore, this Court has recognized that a juror's mere falling asleep for a short time does not necessarily constitute a sufficient cause for a new trial absent a convincing explanation as to why the alleged behavior deprived the defendant of his rights. *Whiting*, 516 N.E.2d at 1068; *McClary v. State* (1881), 75 Ind. 260, 265. The affidavit here fails to specify the identity or duration of the specific instructions, argument, or testimony missed. In the present case, the defendant has failed both to adequately establish juror inattentiveness and to convincingly demonstrate prejudice to his rights. We find no sufficient explanation to demonstrate deprivation of rights. There is no error on this issue.

### 3. Prosecutorial Misconduct

■ The defendant contends that the prosecutor's closing summation was improper. Part of defense counsel's final argument to the jury questioned the State's decision to present only one witness. In rebuttal argument, the State responded:

> Where are the witnesses? Well, I have something to say, if those witnesses were important to the State's case to prove that Mr. Chubb was guilty, they'd have been here to testify to help support the case. They weren't needed. They are not here. But, if those witnesses were important to the defendant's case ... where are they?

Supplemental Record at 19. Defense counsel's immediate objection and motion for mistrial were overruled. Emphasizing that he bears no burden of proof at trial, the defendant argues that the prosecutor's response wrongly shifted the burden of proof from the State to the defendant, thereby constituting prosecutorial misconduct. To support his argument, the defendant seeks to distinguish *Pettiford v. State* (1987), Ind., 506 N.E.2d 1088, where we held that a similar impropriety in closing argument was *de minimus* and cured by the preliminary and final instructions which advised the jury that the defendant was not required to present any evidence or to prove his innocence. *Id.* at 1089–90. The defendant emphasizes that such curative instructions were not included in the court's final instruction in the present case,

thus leaving the prosecutor's challenge uncured.

This was a one-day trial. A substantial portion of the morning was devoted to jury *voir dire*, and the court's seven preliminary instructions were read to the jurors immediately before their lunch break. Among other things, these preliminary instructions advised the jury to presume that the defendant is innocent and that the State has the burden to prove that the defendant is guilty beyond a reasonable doubt of every essential element of the charged offense. The preliminary instructions also stated:

> Since the defendant is presumed to be innocent, he is not required to present any evidence to prove his innocence, nor to prove, do, or explain anything.

Record at 219. Although the trial court did not later re-read these preliminary instructions, the final instructions referred the jury to the court's preliminary instructions and advised the jurors to consider them along with the final instructions in arriving at a verdict. Thus, as in *Pettiford*, the jury was properly instructed that the defendant was not required to present any evidence or prove his innocence. Accordingly, we find that any impropriety in the closing argument was *de minimus* and overcome by the court's preliminary instructions which had been given only a few hours earlier during the one-day trial.

### 4. Use of Peremptory Challenges

The defendant contends that his trial was tainted by purposeful racial discrimination during jury selection because the prosecutor used peremptory challenges to exclude two potential jurors who, like the defendant, were African–American. At trial, the defendant promptly objected to these exclusions, and the State responded with an explanation alleged to be racially-neutral.

The case was tried to a six-person jury. However, the record and the parties' briefs fail to present conclusive information or assertions regarding the trial jury's final racial composition and whether it included any African–Americans. Likewise, no such information is presented regarding the State's other use of the peremptory challenge. We note, however, that defense counsel's argument on this issue at trial included allegations that the State was "removing the last black person from the jury," that the prosecutor "(inaudible) all the dark persons from the jury," and that the prosecutor "has established that he doesn't want any black people on this jury and he is going to strike them so long as he has peremptory challenges left." Record at 181, 182, and 189–90. In its brief, the State expressly notes the defendant's assertion that the prosecutor removed "all dark people" from the jury and does not contest the accuracy of this assertion. Brief of Appellee at 13.

■ With respect to prosecutorial exercise of peremptory challenges, this Court has adopted the requirements for purposeful racial discrimination enunciated by the United States Supreme Court in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. *See Phillips v. State* (1986), Ind., 496 N.E.2d 87, 89. For a defendant to establish a *prima facie* case of purposeful racial discrimination in the selection of a jury, it must be shown that (1) the defendant is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire; and (3) the facts and any other relevant circumstance of the defendant's case raise an inference that the prosecutor used that practice to exclude veniremen from the jury due to their race. *Splunge v. State* (1988), Ind., 526 N.E.2d 977, 980, *cert. denied* (1989), 490 U.S. 1110, 109 S.Ct. 3165, 104 L.Ed.2d 1028. Once such a *prima facie* showing has been established, the burden shifts to the State to present an explanation for challenging such jurors. *Id.* Although the prosecutor's explanation must relate to the particular case to be tried, it need not rise to the level justifying exercise of a challenge for cause. *Weekly v. State* (1986), Ind., 496 N.E.2d 29, 31. It is then the trial court's duty to determine whether the defendant has established purposeful discrimination. *Splunge*, 526 N.E.2d at 980. Here, the trial court's finding is accorded great deference. *Id.*

The defendant asserts that the State excluded two jurors of the same cognizable racial group as the defendant despite the fact that the removed jurors' responses were similar to responses by people allowed to remain on the jury panel. The State concedes that it "could be argued that this is sufficient to raise the presumption" of purposeful racial discrimination, Brief of Appellee at 13, but argues that the prosecutor successfully rebutted the presumption by providing sound and neutral reasons for his exercise of both peremptory challenges.

The prosecutor asserted that he removed one juror due to the juror's familiarity with a minister who was designated as a prospective defense witness. This explanation was satisfactory to rebut the presumption of purposeful racial discrimination as to this potential juror. As to the exclusion of this juror, the trial court did not abuse its discretion.

The second claim of discriminatory jury challenge involves one of two venirepersons, Larry Livsenfelser and John Joiner, seated to fill vacancies created when others were excused during the jury selection process. The trial court limited the prosecutor to sixty seconds to question both new potential jurors. The following questioning of both jurors occurred:

> PROSECUTOR: Do you believe that I can convict a man with testimony of one person?
> PROSPECTIVE JUROR: It has to be heard on both sides.
> PROSECUTOR: Okay. What, alright, what do you think?
> PROSPECTIVE JUROR: Well, I have asked myself if it happened in a public place, and why was there only one witness before the judge?
> PROSECUTOR: Well, have you ever been in the men's restroom in a mall and there has only been you in it?
> PROSPECTIVE JUROR: Yah.
> PROSECUTOR: Okay, so, does that answer your questions, would that take care of it? That there was no one else around.
> PROSPECTIVE JUROR: Except the guy that is being accused.
> PROSECUTOR: Alright.

> PROSPECTIVE JUROR: So it is the police officer against a private citizen. And the law basically is going to lean towards the police officer?
> PROSECUTOR: Why is it going to lean toward the police officer? You are the juror, you are the one who has to decide whether he is guilty or not.
> PROSPECTIVE JUROR: So at this point I have got to ask myself why is there only one witness?
> PROSECUTOR: Because he was the only one in there. What if he is the only one in there?
> PROSPECTIVE JUROR: Then I would have to weigh the issue of, do I believe officer or do I believe the defendant?
> PROSECUTOR: Okay, thank you.

Record at 171–173. The Record does not indicate the identity of either juror. Only one of the two prospective jurors, Mr. Joiner, was excused by the prosecutor's use of a peremptory challenge.

The defendant argues that Mr. Joiner was peremptorily challenged by the prosecutor based upon responses that closely parallel the responses of Mr. Livsenfelser. In arguing his motion for mistrial before the trial court, defense counsel stated:

> Mr. Joiner was asked two questions, Mr. Joiner did not appear to understand the initial question placed by [the prosecutor], when he asked him again, Mr. Joiner gave a very similar answer, that answer was given by Mr. Livsenfelser. Then the State exercised the peremptory strike against Mr. Joiner, . . . .

Record at 181.

In response, the State argued as follows to the trial court:

> I would like to point out for the record that I had sixty seconds to question two jurors. One of them was Mr. Joiner and the other was Mr. Livsenfelser, I believe his name was. Mr. Joiner, I spent the most time with and he responded to me, my questions wanting to know why there wasn't another witness there and specifically stated that he believed the cop had the upper hand in this case. And based on those

responses I believe that Mr. Joiner was not, going to be able to be an impartial juror sitting on this case. In no instance were any jurors struck because of their race.

Record at 185–86. Defense counsel thereafter responded:

[The prosecutor] didn't get any answer different from Mr. Livsenfelser than he got from Mr. Joiner. And Mr. Joiner made it clear that he answered the question "Yes, I think that the police have the upper hand in this type of situation."

Record at 188.

Utilizing the arguments of counsel at trial to guide our attempts to determine which prospective juror made which response, we conclude that Mr. Joiner's cautious and careful answers implied a clear and correct reluctance to assume that the credibility of police was any greater than that of a private citizen. However, the colloquy provides support for the State's assertion that the prosecutor's peremptory challenge of Mr. Joiner was sound exercise of sound trial strategy, was racially neutral, and did not evince purposeful discrimination. We do not find that the trial court abused its discretion in denying the defendant's motion for mistrial based upon the State's use of peremptory challenges.

Transfer is granted. The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and SULLIVAN, JJ., concur.