**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana



FILED

Dec 27 2012, 9:41 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL CRAIG,                          )
                                        )
    Appellant-Defendant,                )
                                        )
          vs.                         )     No. 49A02-1205-CR-395
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.                 )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
The Honorable Christina Klineman, Commissioner
Cause No. 49G05-1110-FB-72124

**December 27, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Michael Craig (Craig), appeals his convictions for Count I, burglary, a Class B felony, Ind. Code § 35-43-3-1; Count II, theft, a Class D felony, I.C. § 35-43-4-2; and his adjudication as an habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUE

Craig raises one issue on appeal, which we restate as: Whether the State's comments during closing argument constituted fundamental error.

## FACTS AND PROCEDURAL HISTORY

On October 7, 2011, Officer Chad Daily of the Indianapolis Metropolitan Police Department (Officer Daily) responded to a dispatch regarding a disturbance on Bradbury Street in Indianapolis, Indiana. Upon his arrival, Officer Daily saw a group of people surrounding Craig. Craig had been restrained by Ronald Wilson III (Ron), Derrick Wilson (Derrick), and James Shepard (James), all of whom are members of the Wilson family. Ron lived with his father, Ronald Wilson Jr. (Ronald Jr.), on nearby St. Peter's Street. After securing Craig, Officer Daily learned from Ron that his home had been broken into and Craig had been seen along with another man running out of the front door of the home. Craig ran into a front yard on Bradbury Street where he was encountered and apprehended by Ron, Derrick, and James. At some point, Craig dropped a single right-handed glove. Officer Daily conducted a pat-down of Craig but found no

2

weapons. However, a later search of Craig's pockets yielded a red jewelry box. Another officer, Officer Vanek, arrived at some point to watch over Craig.

Following Officer Daily's arrival, Ron returned home where he was later joined by Officer Daily and an evidence technician officer. The home had been ransacked, interior doors and locks were damaged, and the following items were missing: a television from the living room; a video game console; and a red jewelry box containing jewelry. A flat screen television from Ronald Jr.'s bedroom was in the living room and some video games were found near the back door. A left-handed glove matching the one dropped by Craig was found in a hallway. The evidence technician fingerprinted the flat screen television which had only Derrick's fingerprints on it. Subsequently, Officer Daily asked Ron about the red jewelry box found on Craig. After identifying it as his, Officer Daily returned it to Ron.

On October 11, 2011, the State filed an Information, charging Craig with Count I, burglary, a Class B felony, Ind. Code § 35-43-3-1; Count II, theft, a Class D felony, I.C. § 35-43-4-2. On November 30, 2011, the State filed an additional Information alleging that Craig was an habitual offender, I.C. § 35-50-2-8. On April 12, 2012, a bifurcated jury trial was held.

Throughout the trial, Craig's counsel challenged the credibility of the State's witnesses. During closing argument, Craig's counsel argued as follows:

> [Derrick's] fingerprints are on there in the [flat screen television found in the living room] […], in this area as the evidence technician indicated, the area that he looks when people are picking up a television. Now how did his fingerprints get on there? I don't know, I know that they said that that

3

[flat screen television] is kept locked in [Ronald Jr.'s] bedroom and nobody is ever allowed in there and nobody had access to it. The other thing I know is we can't ask him why his fingerprints were on there because he wasn't here. He didn't testify. […]. And why wasn't he here? I don't know. That's a question that I can't answer. I know if he was able to testify to the things that they said he could, I would expect he would be here. And if not, then why would his fingerprints be on the [flat screen television]? I don't understand. Maybe he's not here so he wouldn't have to answer that question. I don't know, but I think you're entitled to know.

[…]

These are the points that I have talked about when I said inconsistencies. Things that are not reasonable, things that reflect poorly on the credibility of the witnesses that the State has presented to you[.]

[…]

Officer Vanek was the only other person present at the time this box was supposed to have been recovered. Nobody else was there, only this officer and that officer. Why isn't he here? How difficult would that have been to bring him in and say hey, you know, let me help put this to rest[?] I was there, I was involved in the search, this is what was recovered, that's that. No. Once again, it's not my burden to produce evidence, it is not my job to answer questions for you. This is the State's responsibility.

(Transcript pp. 285-86, 288, 293). The prosecutor argued the following during in rebuttal:

Are you firmly convinced that this defendant is guilty? [Defense counsel] says why wasn't Derrick called as a witness? Why wasn't Officer Vanek called? Guess what? I have, on behalf of the State of Indiana, I absolutely have the burden of proof to prove to you, we all know that, correct? But [defense counsel] has the same subpoena power I do[.]

(Tr. p. 295).

Craig's counsel immediately objected arguing that the State was "suggesting that we have any duty to present evidence and we don't." (Tr. p. 295). The State responded

4

that under federal case law it could do so in response to remarks made in Craig's closing argument. During a sidebar, Craig's counsel said that the State could make such comment only if the trial court permitted it. The State declined to make further comment but insisted that its response was proper when "the State makes it clear it's our burden of proof." (Tr. 296). The trial court made no ruling and the State continued its rebuttal by offering explanations why Derrick's testimony would not be relevant. The State concluded with comments regarding its burden of proof: "Hold me to my burden but my burden is to firmly convince you of [Craig's] guilt." (Tr. p. 299).

The jury found Craig guilty as charged. Following Craig's jury waiver for the habitual offender adjudication, the trial court found Craig guilty of being an habitual offender. On April 19, 2012, the trial court held a sentencing hearing and sentenced Craig to twelve years' incarceration at the Department of Correction for burglary, enhanced by ten years for being an habitual offender, and two years for theft. The sentences were ordered to run concurrently, making Craig's aggregate sentence twenty-two years to be served in the Department of Corrections.

Craig now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Craig argues that the State committed prosecutorial misconduct by stating that defense counsel had the same subpoena power as the State during closing argument. He contends that this statement impliedly suggested that Craig had an obligation to call witnesses on his behalf and thus shifted the burden to proof on his guilt. To properly

5

preserve appellate review of an improper argument made by the State during trial, the defendant must request an admonishment. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). If the admonishment is believed to be insufficient, then the defendant should move for a mistrial. *Id*. If properly preserved, we consider claims of prosecutorial misconduct under a two-step inquiry "(1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected." *Id*.

Although Craig's counsel objected to the remark and a sidebar discussion followed, the record before us contains no request for an admonishment or motion for a mistrial.[1] Accordingly, Craig's claim of prosecutorial misconduct has not been properly preserved and is therefore waived. *See id*. Where a claim of prosecutorial misconduct has not been properly preserved, the defendant must establish the grounds for the misconduct and the additional grounds for fundamental error. *Id.* Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Id.* An error is fundamental when it makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. *Id.* For prosecutorial misconduct to be fundamental error,

---

[1] While not arguing fundamental error on appeal, Craig nevertheless acknowledges that "[t]he record is unclear whether the trial court relied on defense counsel's objection, but the prosecutor's statement was not struck from the record, and no instruction to disregard it was given to the jury." (Appellant's Br. pp. 4-5).

it must be demonstrated that the prosecutor's conduct subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. *Isaacs v. State*, 673 N.E.2d 757, 763 (Ind. 1996). Craig has not demonstrated that fundamental error occurred here.

During closing argument, the State relied upon *United States v. Sblendorio*, 830 F.2d 1382 (7th Cir. 1987), *cert. denied*, 484 U.S. 1068 (1988), to support its comments on Craig's subpoena power. In *Sblendorio*, the Seventh Circuit Court of Appeals determined that a federal prosecutor's comments on the defendant's subpoena power during closing argument were permissible so long as they did not indirectly invite "an inference based on the defendant's own silence." *Id*. at 1393. Such comments were deemed "evidentiary inferences" that invite the jury to draw an inference regarding the reliability of the evidence presented. *Id*. at 1391. As inferences, they do not shift the burden of proof or penalize the defendant's Fifth Amendment right against self-incrimination, but rather represent "an accurate piece of information combined with a legitimate argument." *Id*. at 1393. The *Sblendorio* court held that the district court had discretion to permit such argument. *Id*. at 1394.

Here, Craig admits that the State's comments did not violate his Fifth Amendment right against self-incrimination but nevertheless insists that the State's comments impliedly suggested "to the jury that Craig had an obligation to present witnesses in his defense, specifically [Derrick] and Officer Vanek." (Appellant's Br. p. 5). Under *Sblendorio,* the State's comments are permissible and did not shift the burden of proof to

7

Craig. However, as noted by both parties, *Sblendorio* is not persuasive as it has never been relied upon in a published decision in Indiana.

Instead, Indiana cases on point reinforce the rule that the State may not directly or indirectly comment on the defendant's failure to testify. Accordingly, while comments that focus on the State's evidence and the lack of contrary evidence are permissible, comments that suggest that the defendant carries the burden of proof are not. *See Dobbins v. State*, 721 N.E.2d 867, 874 (Ind. 1999). Where the State's comments have arguably crossed this boundary, Indiana cases focus on whether such comments were *de minimis* and cured by the trial court's preliminary and final jury instructions. *See Chubb v. State*, 640 N.E.2d 44, 48 (Ind. 1994), *reh'g denied*.

To the extent that the State's comments could impliedly be found to shift the burden, we conclude that such comments were nevertheless *de minimis* and cured by the State's subsequent rebuttal and the preliminary and final jury instructions. *See id.* at 49. Here, the contested language consisted of the State's one sentence declaration that Craig's counsel had the same subpoena power as the State. Immediately preceding that was a reference to the State's burden of proof. Following Craig's objection and the sidebar conference, the prosecutor made no further reference to Craig's subpoena power, but went on to explain why Derrick's testimony was not required and repeated that the State had the burden of proof. The trial court's preliminary instructions specifically stated that the defendant is presumed innocent, had no burden to present any evidence to prove his innocence, and that the State had the burden of providing the defendant guilty

8

beyond a reasonable doubt. The record indicates that the trial court read the preliminary instructions to the jury prior to the lunch of this one-day trial. Before the end of the day, final instructions were read to the jury. While not including a reference to the burden of proof, the final instructions referred the jury to the preliminary instructions which the jury was to consider in arriving at its verdict. *See id.* As a result, we find that State's comments here did not subject Craig to grave peril nor had a probable persuasive effect on the jury's decision.

## CONCLUSION

Based on the foregoing, we conclude that the State's comments during closing argument did not constitute fundamental error.

Affirmed.

BAKER, J. and BARNES, J. concur