## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 06 2015, 5:43 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Clifford M. Davenport
Davenport Law Offices
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Luis A. Ramirez,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 6, 2015

Court of Appeals Case No.
48A02-1412-CR-875

Appeal from the Madison Circuit Court

The Honorable Thomas Newman, Jr., Judge

Trial Court Cause No.
48C03-1403-FC-533

**Najam, Judge.**

## Statement of the Case

Luis A. Ramirez appeals his convictions, after a jury trial, for sexual misconduct with a minor, as a Class C felony; child exploitation, a Class C felony; and possession of child pornography, a Class D felony. On review he raises the following two issues:

1. Whether the State presented sufficient evidence to sustain his convictions; and

2. Whether the trial court erred in denying his motion for a mistrial due to alleged prosecutorial misconduct.

We affirm.

## Facts and Procedural History

On October 5, 2013, Officer Steven White of the Madison County Sheriff's Department responded to a call concerning an intoxicated female juvenile named S.L. S.L. was seventeen years old at that time, and she told Officer White that she had had sexual intercourse with Ramirez for "thousands of dollars." Appellant's App. at 74. On October 7, Officer White conducted a recorded interview with S.L., during which she stated that Ramirez had shown her a video on his laptop computer of a girl performing fellatio on Ramirez.

S.L. identified the girl in the video as M.N.,[1] a classmate of S.L.'s at Pendleton Heights High School.

[3] On October 17, the police obtained and executed a search warrant for Ramirez' house. The police recovered from the premises several cell phones, thumb drives, laptop computers, and an SD card. The SD card contained the video of Ramirez receiving fellatio from M.N. The officers arrested Ramirez the same day and read him his *Miranda* rights, which he waived.

[4] Once Ramirez was in police custody, Detective Brett Wright conducted an interview with him during which Ramirez admitted that he had shown S.L. the video of M.N. performing an oral sex act on him. Ramirez also admitted to having pictures of a naked M.N. on his cell phone, on his email account, and on the SD memory card, which also contained the video of M.N. Ramirez informed Detective Wright that he did not know how old M.N. was but that she had told him at a high school football game several months before the sex act that she was seventeen years old.

[5] On March 28, 2014, the State filed the following charges against Ramirez: Count I, sexual misconduct with a minor, as a Class C felony; Count II, child exploitation, a Class C felony; and Count III, possession of child pornography,

---

[1] Indiana Administrative Rule 9(G)(2)(g)(i) provides that juveniles who are victims of sex crimes must be identified only by their initials. Ramirez' counsel on appeal failed to follow this rule, instead using the alleged victim's full name in his brief. We admonish Ramirez' counsel to, in the future, use only the initials of any juveniles who are alleged victims of sex crimes.

a Class D felony. The charging information alleges that the underlying sex act with M.N. took place "on or about April 23, 2013." Appellant's App. at 99.

[6] The court held Ramirez' jury trial on October 30 and 31, 2014. At the trial, R.H., a friend and classmate of M.N., testified that she knew Ramirez and had told him sometime in 2013 that M.N. was fifteen years old. M.N. also testified at trial. She stated that her date of birth was July 22, 1998, and that she was fourteen years old at the time she performed oral sex on Ramirez. She testified that Ramirez had offered her marijuana in return for sex, and she believed the sex act took place in October 2012. M.N. said Ramirez had made her "a lot" of offers, through Facebook, of drugs for sex. Tr. at 261.

[7] M.N. was not asked about, and she did not testify about, whether she had ever met Ramirez at a football game or told him that she was seventeen years old. However, she did testify that she and Ramirez had known each other since she was in elementary school and that she thought he should have known her true age. She said Ramirez has two brothers who go to school with her, one in a grade below her and one in a grade above her. M.N. also testified that Ramirez frequently socialized with a mutual friend who was the same age as M.N. M.N. did not know that Ramirez was recording the sex act until she was told by the police. At the jury trial, M.N. identified a picture of herself that was taken in the summer of 2012 and admitted into evidence.

[8] Detective Wright testified about what Ramirez had told him in the October 17, 2013, interview. Sargent Jennifer Barnes testified and identified the video of

M.N. performing oral sex on Ramirez. That video was subsequently shown to the jury and entered into evidence.

[9] Ramirez testified that he had met M.N. once when she was in elementary school and did not see her again until he ran into her at a November 2012 high school football game. Ramirez testified that M.N. told him at that game that she was seventeen years old. He admitted to having offered M.N. marijuana for sex and that M.N. had performed oral sex on him in January or February of 2013. He admitted that he had recorded that sex act without M.N.'s knowledge, and he testified that he had done so because he wanted leverage to use against her if she tried to have someone beat him up. Ramirez further testified that R.H. never told him M.N.'s age and that he thought M.N. was eighteen by the time of the sex act.

[10] In both the preliminary and final jury instructions, the trial court informed the jury that (1) the defendant was not required to present any evidence to prove innocence; (2) the burden of proof was on the State to prove guilt beyond a reasonable doubt; and (3) the jury was not to conduct any investigation of its own. In its final instructions, the trial court also informed the jury that (1) it should not conjecture or draw any inferences about evidence ruled inadmissible; (2) it should not be influenced in its decision-making by sympathy or prejudice for or against the defendant or complaining witness; (3) it should consider only the evidence admitted in the case and disregard any and all other information from any and all other sources; and (4) statements and arguments of the attorneys were not evidence.

[11] The jury found Ramirez guilty of all three charges, and the trial court sentenced him to an aggregate term of four years executed. Ramirez now appeals his convictions.

# Discussion and Decision

### Issue One: Sufficiency of the Evidence

[12] Ramirez asserts that the State presented insufficient evidence to support his convictions for sexual misconduct with a minor, child exploitation, and possession of child pornography. When reviewing a claim of sufficiency of the evidence,

> we do not reweigh evidence or judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the verdict. *Hyche v. State*, 934 N.E.2d 1176, 1178 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. This review "respects the jury's exclusive province to weigh conflicting evidence." *Allen v. State*, 844 N.E.2d 534, 536 (Ind. Ct. App. 2006), *trans. denied*. We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*. The factfinder is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe, *Atwood v. State*, 905 N.E.2d 479, 484 (Ind. Ct. App. 2009), *trans. denied*, and is not required to believe a witness' testimony even when it is uncontradicted. *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004).

*Wood v. State*, 999 N.E.2d 1054, 1063-64 (Ind. Ct. App. 2013), *trans. denied*, *cert. denied*, 135 S. Ct. 250 (2014).

[13] Pursuant to Indiana Code Section 35-42-4-9(a) (2012), to prove Ramirez committed sexual misconduct with a minor, the State was required to show that he was at least eighteen years of age and engaged in deviate sexual conduct[2] with a minor who was at least fourteen years of age but less than sixteen years of age. However, it is a defense that the accused person reasonably believed that the child was at least sixteen years of age at the time of the conduct. I.C. § 35-42-4-9(c) (2012). To prove that Ramirez committed child exploitation, the State was required to show that Ramirez knowingly or intentionally managed, produced, sponsored, presented, exhibited, photographed, filmed, videotaped, or created a digitized image of any performance or incident that includes sexual conduct by a child under eighteen years of age. I.C. § 35-42-4-4(b)(1) (West Supp. 2012). And to prove that Ramirez possessed child pornography, the State was required to prove that he knowingly or intentionally possessed a picture, a drawing, a photograph, a negative image, undeveloped film, a motion picture, a videotape, a digitized image, or any pictorial representation that depicts or describes sexual conduct by a child who the person knows is less than sixteen years of age or who appears to be less than sixteen years of age, and that

---

[2] "'Deviate sexual conduct' means an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person . . . ." Ind. Code § 35-31.5-2-94 (2012).

lacks serious literary, artistic, political, or scientific value. I.C. § 35-42-4-4(c) (West Supp. 2012).[3]

[14] On appeal, Ramirez contends either that the State did not present sufficient evidence to prove that he had the mens rea required for each of the charged offenses or that the State's evidence is insufficient to rebut his defense that he reasonably believed M.N. to be eighteen years old at the time of the offenses. Ramirez does not challenge the sufficiency of the State's evidence showing that M.N. was, in fact, fourteen years old at the time of the offenses,[4] and he does not challenge the sufficiency of the evidence with respect to any of the other elements of the offenses.

[15] The State presented the following evidence that Ramirez knew M.N.'s true age: R.H. testified that she had previously told Ramirez M.N.'s true age, and M.N. testified that she thought Ramirez knew or should have known her true age. Moreover, the jury had before it a picture of M.N. from the summer of 2012, and M.N. appeared in person before the jury, thus allowing the jury to determine first-hand the credibility of Ramirez' defense that he thought M.N. was eighteen. *See, e.g.*, *Moore v. State*, 369 N.E.2d 628, 632 (Ind. 1977) (noting a jury's observation of a witness at trial is sufficient evidence from which the jury

---

[3] Our legislature has chosen not to criminalize consensual sexual conduct of sixteen- and seventeen-year old minors, I.C. § 35-42-4-9(a), but has chosen to criminalize the creation of images and, hence, the exploitation of such sexual conduct, I.C. § 35-42-4-4(b)(1).

[4] There was conflicting evidence about the precise date when the underlying sex act occurred, but the evidence indicates it happened sometime between October 2012 and April 2013. And it is undisputed that M.N., who was born on July 22, 1998, was in fact age fourteen during that entire period of time.

can determine the witness's age). Thus, Ramirez' contentions on appeal amount to a request that we reweigh the evidence and reassess the credibility of the witnesses, which we will not do. The State presented sufficient evidence to support Ramirez' convictions.[5]

### *Issue Two: Prosecutorial Misconduct*

[16] Ramirez alleges that the trial court erred in denying his motion for mistrial due to prosecutorial misconduct. Specifically, he alleges that the prosecutor engaged in misconduct in his closing and rebuttal arguments when he (1) discussed facts not in evidence; (2) shifted the burden to the defendant to provide evidence; and (3) appealed to the sympathy of the jury.

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006), quoted in *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. *Mahla v. State*, 496 N.E.2d 568, 572 (Ind. 1986). "Whether a prosecutor's argument constitutes misconduct is measured by reference to

---

[5] With respect to sexual misconduct with a minor, a defendant's reasonable belief that his victim is sixteen or older is a defense under the explicit terms of the statute, and the burden of proving this affirmative defense by a preponderance of the evidence is on the defendant. *Weaver v. State*, 845 N.E.2d 1066, 1069 (Ind. Ct. App. 2006), *trans. denied*. When a convicted defendant claims that his defense should have prevailed at trial, he is "in the position of one appealing from a negative judgment." *Newson v. State*, 785 N.E.2d 1155, 1157 (Ind. Ct. App. 2003). We reverse a negative judgment only if the decision of the trial court is contrary to law. *Id.* at 1158. However, Ramirez does not contend on appeal that he met his burden of proof regarding the affirmative defense and, in any event, the jury obviously determined that he did not.

case law and the Rules of Professional Conduct. The gravity of peril is measured by the *probable persuasive effect* of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Cooper*, 854 N.E.2d at 835 (emphasis added) (citations omitted). To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Id.*; *see also Maldonado v. State*, 265 Ind. 492, 498, 355 N.E.2d 843, 848 (1976).

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (emphasis original).

[17] Here, Ramirez' trial counsel objected to the prosecutor's statements regarding facts not in evidence, burden shifting, and invoking jury sympathy. He also requested admonishments and a mistrial due to prosecutorial misconduct. Because Ramirez properly preserved the issue of prosecutorial misconduct in the trial court, we determine whether there was misconduct and, if so, whether the misconduct placed the defendant in grave peril to which he would not otherwise have been subjected.

*Facts not in evidence*

[18] During his closing statement, the prosecutor stated that there was no Pendleton Heights High School football game in November of 2012, and he told the jury they could "look [that alleged fact] up in any newspaper in the country." Tr. at 365. Ramirez' lawyer objected, and the trial court stated to the prosecutor, in front of the jury, that the jury "cannot look it up." *Id*. The prosecutor then read from a piece of paper that was not in evidence to indicate that there was no football game in November 2012. Ramirez' lawyer again objected and sought

an admonishment. The trial court did not rule on the objection or admonish the jury, but it stated to the prosecutor, again in front of the jury, that the prosecutor could "not use that document." *Id.* at 366.

[19] The prosecutor should not have referred in his closing argument to facts not in evidence. *See, e.g.*, *Neville v. State*, 976 N.E.2d 1252, 1263 (Ind. Ct. App. 2012), *trans. denied*. However, that misconduct did not place Ramirez in grave peril because the trial court's preliminary and final jury instructions diminished any persuasive effect the prosecutor's comments might have had on the jury's decision if left unanswered. *Id.*; *see also Stephenson v. State*, 742 N.E.2d 463, 485 (Ind. 2001) ("Having found that any prosecutorial impropriety which may have occurred was de minimus or otherwise overcome by the trial court's admonishments and instructions, we are unable to conclude that Defendant was placed in grave peril."). In its preliminary instructions, the trial court informed the jury that it was not to conduct any investigation of its own. And in the final instructions, the trial court stated that the jury should consider only the evidence admitted in the case and disregard any and all other information from any and all other sources. These jury instructions were sufficient to overcome any harm to Ramirez from the prosecutor's statements.

*Burden Shifting*

[20] Similarly, there was no grave peril caused to Ramirez by any of the prosecutor's statements that Ramirez claims shifted the burden of proof to him. In his rebuttal argument, the prosecutor stated that, although the defendant was not

required to prove anything, he chose to take the stand and "put on a case." Tr. at 388. The prosecutor then stated, "I have to wonder why that case did not include a copy of this video of the football game he talked about." *Id.* Ramirez' counsel objected, but the court did not rule on the objection and the prosecutor went on to say to the jury, "I'd like to see the video of that football game that never took place. Wouldn't you? Think about it and thank you." *Id.* at 389.

[21] Although "[i]t is improper for a prosecutor to suggest that a defendant shoulders the burden of proof in a criminal case," *Stephenson*, 742 N.E.2d at 483, that is not what happened here. Rather, "the prosecutor was merely focusing on the State's evidence and the lack of evidence to the contrary. It is not improper for a prosecutor to focus on the uncontradicted nature of the State's case in closing arguments." *Dobbins v. State*, 721 N.E.2d 867, 874 (Ind. 1999) (citations omitted).

[22] Moreover, even if the prosecutor's statements here were misconduct, statements shifting the burden to the defendant "may be cured by the trial court advising the jury that the defendant was not required to prove his innocence or to present any evidence." *Stephenson*, 742 N.E.2d at 483 (citing *Chubb v. State*, 640 N.E.2d 44, 49 (Ind. 1994)). Here, the trial court informed the jury in both the preliminary and final jury instructions that the defendant was not required to present any evidence to prove innocence or to prove anything at all. Such instructions were sufficient to cure any harm that might otherwise have been

caused even if the prosecutor had made statements suggesting that Ramirez had the burden of proof. *Id.*

*Appeals for sympathy for the alleged victim*

[23] Finally, any harm from the prosecutor's appeals to the jury for sympathy for the alleged victim were similarly mitigated by the trial court's instructions. In his closing argument, the prosecutor told the jury that "[w]e protect our young women. We protect all of our juveniles. We protect them from themselves." Tr. at 371. The prosecutor also asked the jury to "remember that [M.N.] deserves justice in this case." *Id.* at 374. The defense attorney's objections to these statements were overruled. The prosecutor continued, "[M.N.] would never do this now. [M.N.] will never do this again. . . . So please don't hold this against her." *Id.* at 375.

[24] The prosecutor's comments that appealed for sympathy for the alleged victim were improper. "'It is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt' or 'to phrase final argument in a manner calculated to inflame the passions or prejudice of the jury.'" *Neville*, 976 N.E.2d at 1264 (quoting *Johnson v. State*, 453 N.E.2d 365, 369 (Ind. Ct. App. 1983). Thus, in *Neville*, we held that a prosecutor's pleas that the jury find the defendant guilty "for the sake of [the victim] and his family" were designed to "stir up the sympathies of the jurors for the victim and have the potential to eclipse the jury's responsibility to base their decision of guilt or innocence solely

on the evidence presented." *Id.* Here, the prosecutor's remarks were similarly improper.

[25] Nevertheless, as with the prosecutor's other statements in this case, the misconduct was cured by the trial court's instructions to the jury. In *Neville*, we held that defense counsel's closing argument, which "forcefully countered" the prosecutor's improper statements, adequately diminished any persuasive effect the statements might otherwise have had. *Id.* at 1265. Here, there were instructions from the trial court countering the improper statements. In its final instructions, the court informed the jury that "[n]either sympathy nor prejudice for or against either the complaining witness or the defendant in this case should be allowed to influence you in whatever verdict you may find." Tr. at 397. This instruction, along with the several preliminary and final instructions admonishing the jury to disregard any statements or other information besides the evidence presented in the case, sufficiently mitigated any harm to the defendant from the prosecutor's remarks.

[26] Given the trial court's preliminary and final instructions to the jury, we are unable to conclude that Ramirez was placed in grave peril from any of the prosecutor's statements, either individually or collectively. "Sufficient independent evidence of guilt and appropriate trial court management of the [prosecutorial] misconduct" can stave off grave peril to a defendant. *Bassett v. State*, 895 N.E.2d 1201, 1209 (Ind. 2008). Such was the case here. The trial court did not err in denying Ramirez' motion for a mistrial.

Affirmed.

Bailey, J., and Crone, J., concur.